## STATE ex rel. WOOTEN, Relator, v. DISTRICT COURT et al., Respondents.

(No. 4,584.)

(Submitted March 8, 1920. Decided April 8, 1920.)

[189 Pac. 233.]

*Prohibition—Husband and Wife—Annulment of Marriage— Temporary Alimony—Power of District Court.*

Prohibition—When Appeal No Bar to Writ.
1. Where the remedy by appeal from an order allowing alimony *pendente lite,* attorney's fees and suit money is not adequate or speedy, the fact that an appeal lies is not sufficient reason for denying the writ of prohibition against the enforcement of the order.

Same—Extent of Review by Supreme Court.
 2. In determining whether the district court exceeded its jurisdiction in making an order of the nature of the above in an action for annulment of marriage asked for on the ground that defendant wife was physically incapable, the supreme court may examine not only the pleadings but the evidence before the trial court.

Husband and Wife—Marriage—Annulment—No Statutory Authority for Temporary Alimony.
 3. Held, that in an action for the annulment of marriage on the ground of defendant wife's physical incapacity, there is no statutory authority for allowing her alimony *pendente lite*, attorney's fees and suit money.

Same—Annulment of Marriage—Power of District Court to Grant Temporary Alimony.
 4. Held, that though the district court has no statutory authority to do so, it may, under its equity jurisdiction in such matters, grant temporary alimony, attorney's fees and suit money to the wife in a suit by the husband for the annulment of the marriage on the ground of her physical incapacity, such power continuing during the pendency of the suit, in the district court or in the supreme court on appeal.

 [As to the power of court to grant alimony *pendente lite* and counsel fees in action to annul marriage, see notes in 5 **Ann. Cas.** 380; 20 **Ann. Cas.** 1347.]

Original application for Writ of Prohibition on the relation of Charles F. Wooten, against the District Court of Silver Bow County and Joseph R. Jackson, a judge thereof. Application dismissed.

*Messrs. Nolan & Donovan,* for Relator, submitted a brief; *Mr. L. P. Donovan* argued the cause orally.

*Mr. Wm. Meyer* and *Mr. Maurice J. English,* for Respondents, submitted a brief; *Mr. Meyer* argued the cause orally.

The district court had jurisdiction to award temporary alimony, suit money and attorneys' fees in the annulment action. (See *Dunphy* v. *Dunphy,* 161 Cal. 92, 118 Pac. 445; *Higgins* v. *Sharp,* 164 N. Y. 8, 58 N. E. 10; *Hunt* v. *Hunt,* 23 Okl. 490, 22 L. R. A. (n. s.) 1202, 100 Pac. 541; 26 Cyc. 918; 1 R. C. L. 905, sec. 52; *Ricard* v. *Ricard,* 143 Iowa, 182, 136 Am. St. Rep. 762, 20 Ann. Cas. 1346, 26 L. R. A. (n. s.) 500, 121 N. W. 525; *Poupart* v. *District Court,* 34 Nev. 336, 123 Pac. 769.)

On right to temporary alimony on annulment of marriage, see notes in 3 L. R. A. (n. s.) 192; 26 L. R. A. (n. s.) 500.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Relator brought action in the district court of Silver Bow county for the annulment of his marriage under section 3636, Revised Codes, on the grounds that: (a) His consent was obtained by the fraud of the defendant; and (b) that the defendant was physically incapable of entering into the marriage relation. Having denied generally the allegations of fraud and incapacity, the defendant applied for and was allowed alimony *pendente lite,* attorney's fees and suit money, and from the order relator appealed; whereupon defendant made application for and was allowed further alimony, suit money, and attorney's fees, over the objection of relator, to enable her to defend against the appeal. Relator then instituted this proceeding for a writ of prohibition against the enforcement of the order last mentioned, and the making of any further orders of a similar character. Respondents moved to quash on the ground that the relator is not entitled to the relief demanded, for the reason that his petition does not state facts sufficient to warrant this court in granting him such relief and that he has a plain, speedy and adequate remedy at law, citing section 7228, Revised Codes: *State ex rel. Browne* v. *Booher,* 43 Mont. 569, 118 Pac. 271, *State ex rel. Topley* v. *District Court,* 54 Mont. 461, 171 Pac. 273 , and *Poupart* v. *District Court,* 34 Nev. 336, 123 Pac. 769.

While an appeal lies from an order allowing alimony (*State* [1]   *ex rel. Nixon* v. *District Court,* 14 Mont. 396, 40 Pac. 66; *Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6), it is obvious that an appeal is not adequate in this case, for each successive appeal taken would be the basis for a new application and a further order for alimony *pendente lite,* attorney's fees and suit money to defend on such appeal. Neither would the appeal be speedy, since the action is not one calling for advancement on the calendar and the case would be disposed of on its merits long before the appeal could be heard.

Section 7227, Revised Codes, provides: "The writ of prohibition * * * arrests the proceedings of any tribunal, corporation, board or person, whether exercising functions judicial or ministerial, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person."

In the case of *State ex rel. Scharnikow* v. *Hogan,* 24 Mont. 379, 51 L. R. A. 958, 62 Pac. 493, this court held that, under Article VIII, section 3, of the Constitution, the foregoing section could not confer on the supreme court the power to issue the writ of prohibition to arrest proceedings not of a judicial nature; but this ruling does not affect the question before us, as we are here dealing with a judicial function.

Under section 7228, the writ may be issued "in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law." (*State ex rel. Lane* v. *District Court,* 51 Mont. 503, L. R. A. 1916E, 1079, 154 Pac. 200.) If, then, under the [2] facts above stated, it appears that the district court was without jurisdiction to make the order complained of, the writ of prohibition is the proper remedy. In considering the question this court may examine, not only the pleadings but the evidence before the lower court, in order to determine whether the lower court is about to exceed its jurisdiction. (*State ex rel. Boston & M. Consol. Co.* v. *District Court,* 22 Mont. 220, 56 Pac. 219.)

The complaint alleges that the plaintiff and defendant intermarried in June of 1919, and "ever since have been and are now husband and wife," and then alleges fraud on the part of the defendant, and that at the time of the marriage she was afflicted with a contagious and infectious disease of a deadly character, which appears to be incurable; that the plaintiff was induced to enter into marriage relation by false representations; and that, if it had not been for such false representations and concealment practiced upon him, he would never have consented to such marriage. He further avers that, as soon as he discovered the true conditions, he left the defendant and has not since cohabited with her. All these allegations are de-

nied by defendant's answer, except as to the marriage and that plaintiff and defendant "ever since have been and are now husband and wife."

The defendant was placed on the stand and established the fact of the marriage, and, on cross-examination, admitted that, just prior to the time plaintiff left her, she was advised by a physician that she was afflicted as charged, and that she told her husband what the doctor had said. A card or chart from the State Department of Health, showing the result of a "Wasserman test" as "4 plus," which indicates, according to the chart, "very strongly positive," or the highest reaction for syphilitic infection, was admitted in evidence, and defendant admitted that she was shown the card just prior to the time her husband left her. She further admitted that, if she was so infected, the infection dated from the time of cohabitation with her former husband and antedated her marriage to plaintiff. She testified further, however, that she had never shown external evidence of such infection, and that she was twice thereafter examined by other physicians who also had such a test made, and that the result of such test was negative. There was no attempt made on the part of the plaintiff to establish fraud or misrepresentations prior to her marriage, or that, if infected, defendant knew of her condition prior thereto; on the contrary, the defendant testified that she was in good health and sound bodily condition at that time. She further testified that she was five months along with child and that she is without means of support or for the defense of the action.

It is contended that the court is without jurisdiction to grant temporary alimony, suit money or counsel fees in an action to annul a marriage, for the following reasons: (1) The statutes of the state confer no authority upon the court to grant the same in such an action. (2) The provisions of the statutes are exclusive and are the measure of the court's authority in matrimonial actions.

1. Taking up the reasons assigned in the order stated, we will first consider the history of this legislation in Montana.

That the courts of this state have no inherent power, either as courts of law or equity, to dissolve marriage, and that the power to decree a divorce is purely statutory, has been determined by this court. (*Rumping* v. *Rumping*, 36 Mont. 39, 12 Ann. Cas. 1090, 12 L. R. A. (n. s.) 1197, 91 Pac. 1057.) This is so because of the fact that, at the time our forefathers brought with them the common law of England, neither courts of law or equity had jurisdiction in such matters; they being handled exclusively by the ecclesiastical courts. (2 Bishop on Marriage and Divorce, 431.) The first legislative assembly of the territory, therefore, provided for actions for divorce, on grounds which are now recognized as applying only to annulment proceedings, as well as those for divorce proper, and provided for the granting of alimony, both permanent and temporary, in all such actions. (Laws of Montana, First Sess. 1864–65, p. 430.) These provisions were carried forward to the Acts of the Seventh Session, 1871–72, page 457, and were later included in the Revised Statutes of 1879, pages 513, 514, and thereafter incorporated in the Compiled Statutes of 1887, as sections 999 to 1006, inclusive.

Although it thus appears that up to 1895 the successive legislative assemblies of this state did not recognize the fact, there is a clear distinction between actions for the annulment of a marriage on pre-existing grounds and those for the dissolution of such a contract for acts committed after its solemnization. The first recognizes but a ceremonial or formal contract and repudiates the idea that there ever was in fact a marriage between the parties, and the decree of the court, when made, declares the marriage null and void *ab initio;* while the latter recognizes the validity of the marriage and seeks a decree dissolving the bonds because of the wrongful act of one of the parties during the existence of the marriage relation. "While a suit for nullity follows substantially the same rules as a suit for divorce, yet it cuts deeper into the soil of consequences than the divorce suit, because the interests and rights of third persons are more affected by it. The children especially have their

legitimacy or illegitimacy irrevocably established by this suit, while they do not by a suit for divorce. Therefore it has been said to be a more privileged suit, and it excites to even greater degree the vigilance and caution of the courts.'' (2 Bishop on Marriage and Divorce, 294.)

In codifying the laws of the state in 1895, the legislature recognized the error made theretofore and separated the two classes of causes of action. (Codes 1895, secs. 110–203, inclusive.) These sections are found in Chapter 2 of Title I of the Civil Code. The Chapter is entitled "Divorce" and is subdivided as follows: Article I: Nullity. Article II: Dissolution of Marriage. Article III: Causes for Denying Divorce. Article IV: General Provisions. This Chapter was carried forward to the Revised Codes of 1907, with but one minor amendment, and the only changes made therein are that the title to Article I now reads "Annulment of Marriage," instead of "Nullity," and the sections are given different numbers in accordance with the new arrangement of the Codes. (Secs. 3636–3689, Rev. Codes.) Section 3677 (191) of Article IV of the Chapter provides: "While an action for divorce is pending the court or judge may, in its or his discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action.'' It also provides for actions for support and maintenance, and that "during the pendency of such action the court, or judge, may, in its or his discretion, require the husband to pay as alimony any money necessary for the prosecution of the action and for support and maintenance," *etc.* It will be noted that the foregoing provisions—and they are the only provisions in the Codes on the subject of alimony—make no reference to actions for the annulment of a marriage.

While it is true that, from 1865 to 1895, the laws of this state specifically empowered the court to grant temporary alimony in this class of cases, as well as actions for divorce, by including both classes of actions in one section, as we have heretofore seen, on the adoption of the Codes with its new classifi-

cation of these two subjects, all the laws on the subject then in effect (secs. 999–1006, Comp. Stats. 1887) were specifically repealed by section 4673 of the Codes of 1895, now section 6235 of the Revised Codes. And, if there still remained any doubt as to whether such sections remained in force, it was further provided that "the Code establishes the law of this state respecting the subjects to which it relates." (Sec. 6214, Rev. Codes.) And: "No statute, law, or rule, is continued in force because it is consistent with the provisions of this Code on the same subject; but in all cases provided for by this Code, all statutes, laws, and rules heretofore in force in this state, whether consistent or not with the provisions of this Code, unless expressly continued in force by it, are repealed or abrogated." (Sec. 6234, Rev. Codes.)

It is therefore evident that whatever statutory authority the court now has in awarding alimony must be found in said section 3677, Revised Codes.

. It is urged by respondents' counsel that, as said section is found in "General Provisions" at the end of Chapter 2 of the Civil Code, which Chapter is entitled "Divorce," and Article I, on "Nullity" or "Annulment of Marriage," being a part of that Chapter, it was intended that such general provisions should apply generally to all actions provided for in the Chapter. The Chapter was, undoubtedly, taken bodily from the California Code, including its arrangement and titles, and, while ordinarily the arrangement and titles in the Codes are given no weight in construing statutes, for the reason that they are usually the work of codifiers rather than that of the legislative assembly, the fact that the Chapter was so adopted by the legislative body itself might have some persuasive force, were it not for the provisions of section 3562 of our Codes, which reads as follows: "(3) The arrangement and classification of the several parts of said Codes have been made for the purpose of convenience and orderly arrangement, and therefore no implication or presumption of a legislative construction is

to be drawn therefrom, nor shall annotations be deemed any part of the statutes.''

It would therefore seem that no presumption in favor of the court's authority can arise from the fact that this proceeding was brought under Article I of the Chapter entitled ''Divorce''; the Article might be taken from the Chapter and placed in any other part of the Code ''for the purpose of convenience and orderly arrangement,'' and would then have not the remotest connection with those sections contained in the article on ''General Provisions.''

Section 3677 authorizes the court to grant temporary alimony in but two classes of cases, to-wit: ''While an action for [3] divorce is pending,'' and ''during the pendency of'' actions for support and maintenance. We are impelled, therefore, to the conclusion that there is no statutory authority in this state for the making of such an award as that complained of.

2. Are the statutory provisions the exclusive measure of the court's jurisdiction in cases involving the marital relation?

The overwhelming weight of authority answers the question in the negative and holds that the right to award alimony in matrimonial cases is a part of the fundamental jurisdiction of courts of equity in all cases where authority is granted to the courts to hear and determine such causes, and this court has, to some extent at least, recognized such a rule. Thus, in the case of *Edgerton* v. *Edgerton,* 12 Mont. 122, 33 Am. St. Rep. 557, 16 L. R. A. 94, 29 Pac. 966, decided in 1893 and prior to the enactment of the statute permitting the court to award alimony, *etc.,* in separate maintenance actions, apart from divorce, and before, by statute, such an action was maintainable, this court held that ''An action of this character if maintainable at all, would naturally lie within the equitable jurisdiction of the district court.'' After quoting the statutes heretofore cited, the court said: ''It is contended that these provisions of the statute as to the decree for alimony and maintenance 'when divorce is granted,' by implication, exclude from

the courts the jurisdiction to enforce the maintenance, except in an action where divorce is decreed. Some have so held, but upon this phase of the question, as upon nearly all aspects of it, eminent authorities are opposed to one another in the views entertained. Our own conclusion upon this particular feature of the question is that the great weight of reason is against the idea that the legislature, in adopting the statute referred to, intended any regulations of the right of the wife to maintenance.'' After discussing the history of equitable jurisdiction and particularly that concerning actions as between husband and wife, the court concludes: ''We will close the inquiry upon this branch of the case by bringing to view certain statutory and constitutional provisions of this state, which to some extent, we think, should influence our determination. The statute provides that: 'Women shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman which her husband does as a man.' * * * (Sec. 1439, Div. 5, Comp. Stats.) Our Constitution provides that 'the district courts shall have original jurisdiction in all cases at law and in equity, * * * and for such special actions and proceedings as are not otherwise provided for.' (Sec. 11, Art. VIII.) And, further, that 'there shall be but one form of civil action, and that law and equity may be administered in the same action.' (Sec. 28, Art. VII.) And, further, that 'courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and that right and justice shall be administered without sale, denial or delay.' (Sec. 6, Art. III.) * * * The court is then confronted with the question whether there shall be a denial of enforcement of this right, except where absolute divorce is granted. We think the intendment of our Constitution and statutes is to negative that proposition.''

In the case of *Finkelstein* v. *Finkelstein*, 14 Mont. 1, 34 Pac. 1090, the court recognized the distinction between an action for divorce and annulment, and, although the statute then per-

mitted the granting of alimony in all actions for "divorce" on the grounds mentioned in the Compiled Statutes of 1887, then in force, determined the question here before us on fundamental grounds, regardless of the statute, when it said: "Of course, one of the essential facts to plaintiff's cause of action is that she is the wife of defendant. If that fact is not present, plaintiff has no case. But on the hearing of a motion for alimony *pendente lite,* it is not for the district court to finally determine that fact. The question is whether there is a sufficient *prima facie* showing of the alleged fact of marriage. * * * It may be true that, if on a motion for alimony *pendente lite,* the defendant shows facts and conditions which absolutely establish that there is no marriage, and that plaintiff is not the wife of defendant, it would not be proper to grant such alimony. But there is no such showing in this case. To recapitulate, the district court had before it this situation: A direct allegation of marriage by the plaintiff, which the defendant denied." Again the court said: "The plaintiff alleges marriage and the present existence of the relation of husband and wife. The defendant sets up facts which he claims, if true, show that there was no marriage and no relation of husband and wife. In our opinion this leaves the matter of marriage simply in the condition of a contention between the parties." The court held, in effect, that, where there is an allegation of marriage and a denial thereof, the facts so alleged present a sufficient *prima facie* case for the award of temporary alimony, suit money, *etc.,* and this *prima facie* case must be thoroughly defeated and the defense fully established by the husband, before he will be relieved. Cases in support of the rule are cited in plaintiff's brief in that case.

In the case of *Twell* v. *Twell,* 6 Mont. 19, 9 Pac. 537, this court held that proceedings for divorce and alimony are of chancery jurisdiction and that the power to decree alimony falls within the general powers of a court of equity.

In the case of *Galland* v. *Galland,* 38 Cal. 265, the supreme court of California said: "There is no provision of the statute

which authorizes an application for alimony, except in connection with a prayer for divorce; and it is claimed on behalf of the defendant that, inasmuch as provision is made for the allowance of alimony only on an application for divorce, it was the intention of the legislature to limit the power of the court to grant alimony to that class of cases. The maxim '*expressio unius est exclusio alterius*' is invoked as applicable to this proposition. But, in my opinion, it has no application to the case. The main subject matter of the statute was the regulation of divorce; and only as incidental to that subject the statute prescribes the power of the court in respect to alimony in that class of cases.. The legislature was not dealing with the general subject of alimony, as an independent subject matter of legislation, but only as one of the incidents of an application for divorce." The court concludes that the power to award alimony falls within the general powers of a court of equity, and exists independent of statutory authority.

As we have heretofore stated, Chapter 2 of the Code of 1895 is identical with the laws of California on the subject, and, under such identical provisions, the court there held that, in an action by the husband to annul the marriage on the ground of fraud, the superior court had authority to award the defendant such an amount as was necessary to enable her to present her defense; the court saying: "Until her alleged fraud is established, she remains the lawful wife of the petitioner, and has the same right to defend the action to annul the marriage that he has to prosecute it, and until she is provided with the means * * * to make her defense, she ought not to be forced into a trial." (*Allen* v. *Superior Court,* 133 Cal. 504, 65 Pac. 977.) And later, in construing these provisions, in a case on all-fours with this, that court said: "For all the purposes of the annulment action, so long as the action is pending, to use the language of *Brinkley* v. *Brinkley,* 50 N. Y. 186, 10 Am. Rep. 460, 'the relation actually exists upon which the right to alimony depends.' So that, even if section 137 of the Civil Code, providing for alimony and cost money in an 'action for

divorce,' does not by its terms include actions for annulment, the weight of authority is in favor of the existence of the power as to cost money, notwithstanding the absence of express statutory authority, and by reason of the general jurisdiction expressly conferred to entertain such actions; and *Allen* v. *Superior Court*, 133 Cal. 504, 65 Pac. 977, must be taken as deciding that such power exists in this state. In view of what we have said, it must also be held that such power exists so long as the annulment action is pending. But there is much force in the claim that the term 'action for divorce,' in section 137, Civil Code, includes such actions for annulment as are provided for in sections 81 and 82 of the Civil Code. Section 137 is a part of Article IV of Chapter 2, Title I, Part III of the Civil Code, an Article entitled 'General Provisions.' Chapter 2 is entitled 'Divorce,' and contains four Articles; Article I being entitled 'Nullity' * * * [being the same arrangement as ours]. It is apparent that the term 'Divorce,' constituting the title of Chapter 2, was used as including annulment proceedings, as well as divorce proceedings, for causes occurring after marriage; and it may well be argued that such provisions in the subdivision entitled 'General Provisions' as are appropriate in actions for annulment are applicable thereto. However, it is not necessary to definitely decide this question here, in view of what we have already said." (*Dunphy* v. *Dunphy*, 161 Cal. 92, 118 Pac. 445.)

The New York court of appeals, in the case of *Higgins* v. *Sharp*, 164 N. Y. 8, 58 N. E. 10, laid down the rule that "the general jurisdiction conferred by the statute to entertain such actions carries with it, by implication, every incidental power necessary for its proper exercise. * * * The power to allow alimony and counsel fees to the wife in order to enable her to live pending the action, and to present her defense, if she has one, must be regarded as incidental and necessary in all matrimonial actions. Without such power the rights of the woman, in many cases, could not be adequately protected. It seems to us, therefore, that actions to annul a marriage are

governed, with respect to alimony and counsel fees, by the same principles as all other actions for divorce. When the court was vested with the jurisdiction in such cases, the incidental power to guard and protect the rights of the wife, which had always been regarded as a part of the jurisdiction, necessarily followed and attached, upon the plainest principles of reason and justice.'' In that case, as here, it was argued that the jurisdiction of the court, in matrimonial cases, is derived solely from statutes, and that, in the absence of statutory authority, the court was without jurisdiction to award alimony in such cases. The case of *Higgins* v. *Sharp,* above, was approved and followed in *Hunt* v. *Hunt,* 23 Okl. 490, 22 L. R. A. (n. s.) 1202, 100 Pac. 541, and in *Willits* v. *Willits,* 76 Neb. 228, 14 Ann. Cas. 883, 5 L. R. A. (n. s.) 767, 107 N. W. 379, and a similar rule announced in *Bird* v. *Bird,* 1 Lee Ch. 621; *Miles* v. *Chilton,* 1 Rob. Ecc. 684; *Vandegrift* v. *Vandegrift,* 30 N. J. Eq. 76; *Griffin* v. *Griffin,* 47 N. Y. 134; *North* v. *North,* 1 Barb. Ch. (N. Y.) 241, 43 Am. Dec. 778; *Smith* v. *Smith,* 1 Edw. Ch. (N. Y.) 255; *Ricard* v. *Ricard,* 143 Iowa, 182, 136 Am. St. Rep. 762, 20 Ann. Cas. 1346, 26 L. R. A. (n. s.) 500, 121 N. W. 525; *Poupart* v. *District Court,* above; *Stapleberg* v. *Stapleberg,* 77 Conn. 31, 58 Atl. 233.

While there are cases—some of them well reasoned and logical—to the contrary, all the modern writers on the subject agree that, where there has been a marriage ceremony performed the validity of which is denied by the husband and asserted by the wife, the latter is entitled to alimony *pendente lite,* suit money and attorney's fees; for the validity of the marriage is the subject in controversy, and the court cannot decide the merits of such a controversy on such preliminary application, with the exception that, where, on the preliminary hearing, if it clearly appears that there was no marriage and that the wife cannot prevail in the action, the court will refuse to grant the application. Thus, in 29 Cyc. 918, the rule is laid down as follows:

"As a general rule, the right to alimony depends on a valid and subsisting marriage, since without this there is no obligation for the support of the alleged wife, and before it can be claimed or allowed, the marriage must be proved or admitted, or, if it is contested, there must appear to the court a fair probability that it will be established (citing cases). Hence, where a wife brings suit for the annulment of the marriage, thereby denying the fundamental fact on which a claim for alimony should be based, no allowance can be made for her support pending the action, or for suit money (citing a large number of cases), unless it be authorized by statute (citing cases).

"On the other hand, where the husband brings the suit and the wife defends, asserting the validity of the marriage, she is in a position to claim alimony *pendente lite* and an allowance for the expenses of the suit and for counsel fees, and it will be granted to her on a proper showing (citing cases). But, of course, it is otherwise if the wife as defendant admits that the marriage was null and void. Permanent alimony cannot be granted in cases of this kind for, if a decree is granted in accordance with the prayer of the petition, it must adjudge the pretended marriage void *ab initio,* and consequently that the parties never sustained the relation of husband and wife."

"Where an actual marriage is shown, and its existence in law is sought to be avoided by some fact set up by the husband, unless he proves that fact, the alleged wife is entitled to temporary alimony. Where the husband denies in his answer that a valid marriage ever existed, the court still has jurisdiction to allow temporary alimony, but it will not be allowed until some evidence of a valid marriage is shown." (19 C. J. 213, 214, and cases cited.)

And in 1 Am. & Eng. Ency. of Law, page 472, we find the statement: "As regards the marriage which must exist to entitle the wife to a decree for temporary alimony—as the merits are not gone into, the court will be justified in granting the decree if the parties had lived together and adjusted their

property rights on the basis of the validity of the marriage—so alimony *pendente lite* has been allowed in nullity cases (citing cases)."

Under the heading "Annulment Suit by Husband," the author, in 1 R. C. L. 905, declares: "An action to annul a marriage brought by the husband stands on an entirely different footing from such an action brought by the wife, so far as the right to alimony *pendente lite* is concerned. When she is in the position of asserting and defending the validity of her marriage, she may consistently invoke the power of the court to compel a provision for her maintenance until the action has determined the relation of the parties. Her marriage to the plaintiff is presumed to be legal until the contrary is shown, and there is no sound reason in law or in morals why a wife who has had a serious charge made against her should not have the same right of assistance from her husband in defending against his charge that she would have were he asking a divorce (citing cases)."

"The authorities, therefore, almost unanimously hold, even in the absence of express statutory authorization, that where a husband seeks an annulment of the marriage on grounds the existence of which is denied by the wife under oath, she is entitled to an allowance during the pendency of the suit. The fact that the husband thereby admits the existence of the marriage relation *de facto,* taken with the wife's denial of its invalidity, is sufficient to sustain the application, for, as has been shown, the court will not go into the merits of the action at that stage. The question should be governed by the circumstances of the case and rests in the sound discretion of the court, and will not be disturbed on appeal unless that discretion has been abused." (19 C. J. 228.)

On the question as to whether the court has authority to make an award in the absence of statutory provision therefor, Mr. Bishop has this to say: "Let us consider the question sometimes arising in our courts, whether, when a statute gives the tribunal jurisdiction over a specific cause of divorce, but is

silent concerning alimony, or provides only for permanent alimony, the temporary can then be awarded; and whether costs, as they are termed in England, or money to defray the expenses of the suit, can also be given.  This question seems plain on principle; first, the authority to make the order belongs to the court under the law imported by our forefathers to this country; secondly, if this were not so, still it springs up necessarily out of the legal relation of the parties, and the condition of facts appearing from the record before the court to which the application is made.  And if any one principle of our jurisprudence is more worthy of commendation than another, it is, that a judicial tribunal may always be pressed to action when a case is presented which comes within established legal rule, though not within precedent.''  (2 Bishop on Marriage and Divorce, sec. 338.)   In section 402 of the same work, it is said: ''The allowance cannot be made until the fact of marriage has been either admitted or proved.  But the marriage need not be valid. . * * *  Where the man seeks to establish the nullity of his marriage on the allegation that the woman has a former husband living, she may have alimony pending the suit, and money to defend.  This question having arisen before Sir George Lee, he observed: 'The man by his suit admitted that he was married to her *de facto;*  * * *  I must presume, till the contrary appears in evidence, that she was his wife *de jure* as well as *de facto;* for otherwise she must be guilty of bigamy, and is a felon; but the law presumes, on the contrary, everybody to be innocent till they are proved guilty.'  The practice here indicated has prevailed ever since this decision.''

Here the plaintiff himself sets up the marriage and alleges that ''ever since said date plaintiff and defendant have been and are now husband and wife.''  He then alleges facts which, if true, would render the marriage null and void.  The evidence heretofore set out, taken before the district court on the hearing, did not establish the truth of such allegations conclusively, and the court, in the exercise of its discretion, allowed the application of the wife.  The testimony so taken

left the question of the validity of the marriage a debatable question, and we cannot say on the record that there was any abuse of that discretion. To have decided otherwise would have been tantamount to a declaration that plaintiff and defendant never had been husband and wife, in disregard of her denials, under oath, of the allegations of the complaint and of her assertion that her marriage is valid and existing; it would be to prejudge the case on its merits.

It is true that, if, on a final hearing, the court finds that the allegations are true, the defendant will not be entitled to alimony, for it will then appear that she never was the wife of the plaintiff, and consequently he was never under legal obligation to her. But on the other hand, if the plaintiff fails in his proof, the defendant will be declared to be his lawful wife, and consequently to have been entitled to support from him from the beginning of the action, yet if she, without means as she has testified, be denied the order prayed for, how is she to combat this most grave charge against her, and who is to support her while the court awaits the final presentation of the case? Until she is adjudged not to be the wife of the plaintiff, he is bound to support her, and, having deserted her, she might, under the statute, bring an action for separate maintenance and in that connection apply for and receive alimony. Why, then, should not a court of equity decree her such alimony pending this action, rather than to force her to a multiplicity of suits? She is presumed to be innocent, as quoted from Sir George Lee, above, until she is proved guilty, and, until such presumption is overcome by competent evidence, she is, as to all the world, the lawful wife of plaintiff and entitled not only to support but to the means necessary to properly meet a charge which will, if proven, deprive her not only of her position as wife, but to a great extent destroy her reputation as a woman, and it would seem that the reasons for awarding a woman, under such circumstances, the means to defend, are more cogent than in the ordinary case of divorce and appeal more strongly to justice and equity.

We are therefore of the opinion that the court, vested with authority to hear and determine actions for the annulment of marriage, has fundamental jurisdiction to grant temporary alimony, suit money, and attorney's fees to the wife, in a suit by her husband, on a proper showing, as a power incidental to the major jurisdiction, though that power does not extend to the granting of permanent alimony on a final disposition of the case in favor of the husband. And that power exists so long as the annulment suit is pending, whether in the district court or in this court on appeal. Under this view of the matter, the lower court had jurisdiction to make the order complained of and acted within such jurisdiction and still has jurisdiction to make like orders, if the necessity therefor arises.

The motion to quash the alternative writ will therefore be sustained and the application dismissed. It is so ordered.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.