SHARON KAY TRUDGEN, PLAINTIFF AND RESPONDENT, *v.* DALE TRUDGEN, DEFENDANT AND APPELLANT.

No. 9678.

329 Pac. (2d) 225.

Submitted Jan. 23, 1958. Decided July 30, 1958.

Raymond F. Gray, Missoula, for appellant.

Doyle & Heinz, Richard P. Heinz and J. A. Turnage, Polson, Richard P. Heinz argued orally, for respondent.

MR. JUSTICE CASTLES:

This is an appeal by defendant, a divorced father, hereafter referred to as the father, from the last of a series of child custody orders made by the district court of the fourth judicial district in and for Lake County; the order appealed from hav-

ing been entered at Polson, on January 17, 1956. The mother, plaintiff in the divorce action, was granted sole custody of the children and is respondent here. Interim orders divided custody. Sole custody was restored to her by the order appealed from.

Two children of the parties are involved, a girl, Cheryl Lynn Trudgen, born October 9, 1953, and a boy, Leslie Kent Trudgen, born February 25, 1955. It is with their welfare this court is primarily concerned. Thus, other things being equal, custody in the mother is to be preferred because these children are of such tender years. R.C.M. 1947, section 91-4515, subd. 2; Bayers v. Bayers, 129 Mont. 1, 281 Pac. (2d) 506.

To safeguard the welfare of children, but neither to reward nor punish parents, child custody orders are interlocutory in nature and for good cause shown, are modifiable in the sound discretion of the district court. R.C.M. 1947, section 21-138. In the absence of a strong showing of abuse of that discretion, custody orders should not be disturbed on appeal. Pearce v. Pearce, 30 Mont. 269, 76 Pac. 289; Kane v. Kane, 53 Mont. 519, 165 Pac. 457; Ex parte Bourquin, 88 Mont. 118, 290 Pac. 250; Oberosler v. Oberosler, 128 Mont. 140, 272 Pac. (2d) 1005.

The record indicates that, with exceptions no longer material, the parents and their counsel appeared at all hearings. The moral fitness of the parents is not questioned. Nothing before us indicates either has remarried.

The original decree of divorce was entered in Lake County on May 17, 1955. At that time, the parties and all grandparents resided near Polson. The children were then about nineteen months and three months of age, respectively. Custody was decreed to the mother without limitation, subject only to right of reasonable visitation in the father. An attorney's fee for securing the divorce, costs and support money were allowed to the mother. Support money has since been increased to $90 per month.

The divorce was granted by the Honorable Albert Besan-

con, then one of the two resident judges for the fourth judicial district. Under rules of court for that district, resident judges sit in Lake County on specified week days during half of each year, alternately beginning January 2nd and July 1st. As a consequence, Judge Besancon heard the divorce action and granted the mother sole custody of the children. The Honorable C. E. Comer heard the intervening motions, increased support money and ordered that custody of the older child be divided between the parents. In a subsequent order Judge Besancon restored sole custody of both children to the mother.

About two months after the divorce decree, the mother moved with her two children to Spokane, Washington. The father continued to reside in Lake County, making his home with his parents. His later custody of the older child was exercised there within these grandparents' home.

On November 8, 1955, the first order modifying the divorce decree was entered. That order specifically authorized the mother to have her children with her in the State of Washington, where she was then residing. Such order required that she return the older child to Lake County at three months intervals for one week of custody by the father, the first period to begin on February 8, 1956.

While this order was in effect, and during the 1955-56 Christmas holidays, the mother returned with her children to visit in the home of her parents near Polson. During the morning of December 27, 1955, on motion of counsel for the father, supported by statements to the court made by the father's parents, but with no notice to the mother and over the objections of her counsel of record who was present in court and protested the lack of notice, the decree as modified November 8, 1955, was further modified to give immediate custody of the older child to the father for one week. Under this order the sheriff of Lake County took the older child from its mother during its lunch period and brought the child into court. The child was not yet fifteen months of age. The sheriff described the

scene at the maternal grandparents' home as "quite a commotion."

Later the same day after the mother and her counsel of record, joined by associate counsel retained during the noon hour, had protested to the judge in chambers that the older child had been terrified by what had occurred and that both children had to be returned by December 29th for booster immunization shots, to Spokane, Washington, a distance of some 250 miles and requiring about twelve hours traveltime by public transportation, the court shortened the father's period of immediate custody of the older child to one day. However, the court ordered the mother to return the older child to Lake County during February 1956 for custody by the maternal grandfather. The maternal grandfather was ordered to deliver the older child at that time to the court so that such order granting the father custody of the child for a period of one week beginning February 8, 1956, together with six days additional time, might be carried out. Much was made in oral argument of a so-called stipulation and agreement as to custody during the 1955-56 Christmas period, but none of this is relevant to the problems at hand.

On January 10, 1956, while the above order was in effect, citation was issued to the father requiring him to appear and show cause why the mother should not have sole custody of both children, reimbursement for expense of travel to a hearing set for January 17, 1956, and allowance of a fee for additional counsel to represent her. Citation was supported by the mother's affidavit. The father traversed by counter-affidavit. As with the so-called stipulation, recital of charges and counter-charges here would serve no purpose.

At the January 17th hearing the court allowed the mother $50 for her travel from Spokane and loss of time, $100 for additional counsel fees, and restored sole custody of both children to her as originally had been decreed. The modifying order specifically recited that the mother would have the

"right and privilege of residing wherever she may select" subject to reasonable visitation by the father.

To support a modification order within three weeks of a prior modification which had been ordered less than seven weeks following a previous modification, counsel for the mother argued that nervousness induced in the older child by changes of custody was in itself a change of condition sufficient to warrant the hearing of January 17th and the modifying order there made returning sole custody to the mother. Counsel for the father objected that within the three-week period following the date of the order of modification then in effect, there had been no change in the circumstances of the parties sufficiently material to justify further modification. He argued that the privilege granted the mother, of taking the children out of the state, nullified the right of visitation accorded him in the original decree of divorce, and would have the same effect if repeated in the order of modification being sought. He asked time to file proposed findings of fact and conclusions of law, with a supporting brief. His objections were summarily overruled; the court instructing the mother to "take your children and go back to Spokane, or wherever you want to live."

It is from this order of January 17, 1956, that appeal is taken. The appellant father specifies error in the court's holding that material change had taken place; in his denying request for time to file proposed findings; in directing the mother to take the children out of the court's jurisdiction; and in allowing additional counsel fees.

1, Was there a material change in conditions?

It is the rule in this jurisdiction that while "a decree fixing the custody of children is final upon the conditions then existing, when it is shown that these conditions have changed, the court or judge then has authority to modify the original decree in respect to them. * * * In proceedings of this nature the welfare of the children is the paramount

consideration.'' Jewett v. Jewett, 73 Mont. 591, 595, 237 Pac. 702, 703.

This rule was stated for the full court more than a quarter century ago and was reiterated in Bayers v. Bayers, supra, 129 Mont. at page 6, 281 Pac. (2d) at page 509, where it is pointed out that ''otherwise either parent of a child or children could constantly harass the other with litigation none of which would be conducive to the best interests of the child.'' Welfare of children is likewise given as the paramount consideration in Wolz v. Wolz, 110 Mont. 458, 102 Pac. (2d) 22, so that in principle the ruling in the Jewett case, the dicta in the Wolz case, and the opinion in the Bayers case are in accord. The facts of the present appeal in themselves confirm the wisdom of the rule. Furthermore, ''Each case must be decided on its own peculiar facts and circumstances.'' Haynes v. Fillner, 106 Mont. 59, 71, 75 Pac. (2d) 802, 806.

''There must be a substantial change of circumstances * * * There is no fixed standard to determine * * * such substantial change * * * the welfare and best interests of the child are the primary concern * * * the substantiality of the change of circumstances is tested with respect to the child's welfare rather than the parents' welfare.'' 17A Am. Jur., Divorce and Separation, section 839, page 32. See also 27 C. J. S. Divorce, section 317 b, page 1188.

When the custodial fitness of neither spouse is questioned a bill of exceptions and a judgment roll reflecting four modifications of custody orders in nine weeks, no matter how well intended or by whom sought or ordered, with undisputed testimony such as follows, is clear *prima facie* record of substantial change *affecting the children*. This is confirmed by the record:

''Q. [to respondent mother] What effect did * * * the sheriff coming after the child * * * have at the time? A. She screamed. She kicked Mr. Graham [the sheriff]. She didn't want to go. She tried to cling to me. * * * The time [after] he [appellant father] had her for a week she cried,

and she wouldn't go to bed alone at night. She was potty trained and she quit that. She screamed, and she resented her little brother and would fight him. After about a month she got over it. The next time when they [appellant and his parents] only had her for a day, she was that way for approximately one week. She was sick both times after she came back.''

It is true that all this reflects no change of circumstances in the parents, and contentious parties may brush aside such infant retrogressions solely as inconvenience; but in the life of a child, not yet two years of age, they may spell tragedy. As the court admonished all parties, ''Better for these children to be away from the grandparents * * * and the continued strife and turmoil that is going on here.''

The first specification of error is without merit.

2. Were findings of fact and conclusions of law mandatory?

The second specification is that the court erred in denying the appellant father's request for findings and conclusions.

On January 10, 1956, the father had filed a verified answer ▮ controverting the mother's affidavit on which citation for hearing January 17th was issued. The respondent mother treats this pleading as a subterfuge, but this objection need not detain us. In these matters, affidavit may be countered by affidavit. See R.C.M. 1947, section 93-1701-1; State ex rel. Merrell v. District Court, 72 Mont. 77, 81, 231 Pac. 1107; 7 Bancroft's Code Practice and Remedies, sections 5786, 5789.

At the close of the hearing, appellant's counsel orally requested ''time to submit'' and asked ''permission to submit'' proposed findings of fact and conclusions of law, with a brief, and stated he believed appellant entitled to a ''reasonable time in which to prepare'' them. The court peremptorily denied this request saying: ''These matters just cannot go over. Certainly the court is not anxious to have proposed findings and conclusions, and a brief is not needed here.'' Except the journal entry which summarizes this colloquy, we find no other reference in the record to any request for findings. *No written motion* for findings and conclusions was filed by appellant.

It is a general rule of procedure that "In the absence of ▉ statute, the court need not make formal findings of fact in support of its order" modifying the custody provisions of divorce decrees. See 27 C. J. S. Divorce, section 317(6), pages 1195, 1197, and citations; see also 53 Am. Jur., Trial, section 1135, page 790. In this state we are controlled by R. C. M. 1947, section 93-505, providing, in part: "No judgment shall be reversed * * * for want of findings at the instance of any party who, at the close of the evidence and argument in the cause, shall not have requested findings *in writing*, and had such request entered in the minutes * * *" (Emphasis supplied.)

As early as 1875 it was said by this court: "There is no error of which the appellant can complain. If he had made his motion a part of the record, the ruling would be plain. * * * This court has held, and the decisions are numerous, that where a judgment is given it will be presumed, unless the contrary appears, that the court that entered the judgment found every material fact at issue in favor of the party for which it gave judgment." Morse v. Swan, 2 Mont. 306, 308. See also Bordeaux v. Bordeaux, 32 Mont. 159, 163-164, 80 Pac. 6, 7; Milwaukee Land Co. v. Ruesink, 50 Mont. 489, and cases cited at page 489, 148 Pac. 396, 398; and Perry v. Luding, 123 Mont. 570, 217 Pac. (2d) 207.

Without further comment we quote three decisions of this court which carry the rule as applicable to the present appeal down to date:

"* * * it is incumbent upon a party, at the conclusion of the evidence and argument in the cause, to make request in writing for findings, and to have the request entered in the minutes of the court. If this is not done, a judgment may not be reversed for want of findings." State ex rel. Quintin v. Edwards, 40 Mont. 287, 299, 106 Pac. 695, 698.

"There is complaint that the trial court failed to make special findings * * * In Bordeaux v. Bordeaux, 43 Mont. 102, 115 Pac. 25, this court said: 'A party failing to make such

request cannot allege error because of the omission to obey the command of the statute. Every finding necessary to support the judgment will then be implied'." Farwell v. Farwell, 47 Mont. 574, 578, 133 Pac. 958, 959.

"In the record before us we find no compliance whatever with the plain provisions of the above mandatory statutes." Bissell v. Bissell, 129 Mont. 187, 198, 284 Pac. (2d) 264, 270.

Under Montana procedure, in hearings on motions to modify child custody orders, parties desiring written findings of facts and conclusions of law must move for them *in writing* at the close of the evidence, as the statute requires. Even then, if the evidence justifies but one conclusion, formal findings are unnecessary. Perry v. Luding, supra.

Appellant's second specification of error is without merit.

3. Was it error to send the children beyond the court's jurisdiction?

From the time of the Bannack Territorial Statutes, child custody orders have been made and modified "as from the circumstances of the parties, and nature of the case shall be fit, reasonable and just." Section 6, Divorce and Alimony, approved February 7, 1865. Such orders are now controlled by R. C. M. 1947, section 21-138, reading: "In an action for divorce the court or judge may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same." Whether permission shall be granted or denied rests within the sound discretion of the trial court. Aiken v. Aiken, 120 Mont. 344, 185 Pac. (2d) 294, and citations.

These matters are discussed at length in the case of Pugh v. Pugh, 133 W. Va. 501, 56 S.E. (2d) 901, 905, 15 A. L. R. (2d) 424, and an extensive annotation beginning at page 432, which citations include Aiken v. Aiken, supra. The West Virginia court makes the point that if "both parties exercise the right to the custody granted by the court the child will have no real or settled home and no permanent environment or asso-

ciation during much of the period of * * * infancy. Such an arrangement is wholly detrimental to the welfare of the child and for that reason, in the circumstances of this case, the court should not have awarded the custody of the child to either of the parties on any separate part-time basis.'' The point is well-taken, particularly here.

We find the following in respondent's uncontradicted testi- mony.

"Q. Is there any reason why you couldn't live in the State of Montana? A. Yes there is. With $75 a month support money [presently increased to $90] I cannot feed and clothe and pay rent and heat for myself and my two children. If I work I have to pay baby sitters. Therefore I went to Spokane. I share expenses with my sister. I do some of her work and we make out. I could not do it alone without help from someone else.

"Q. You were living with your parents first? A. I was. I don't figure it's the duty of my parents to help raise my children. * * * When I file for a job I tell them I have to be back in three months [in Montana]. They say, I'm sorry, we can't use you. I have yet to find anyone that will hire a person under such conditions.''

As stated above, limitations on residence of children are to be conditioned by what appears best for the children. We repeat: ''The statutes expressly invest the trial judge with much discretion in these matters and we find no abuse in the exercise of that discretion by the trial judge.'' Wilson v. Wilson, 128 Mont. 511, 516, 278 Pac. (2d) 219, 222. See also Barham v. Barham, 127 Mont. 216, 259 Pac. (2d) 805.

Appellant's third specification of error is without merit.

4. Was it error to allow additional fees for counsel?

Beginning with the afternoon hearing in chambers on December 27, 1955, respondent's attorney of record was joined by associate counsel. The court allowed them $100 for attorneys' fees in the citation and order to show cause heard on January 17, 1956. Appellant assigns this as error.

The respondent mother argues that the hardship worked on her by the father's actions prior to January 17th, and the situation such actions created, justify allowance of an attorney fee. She cites McDonald v. McDonald, 124 Mont. 26, 218 Pac. (2d) 929, 15 A. L. R. (2d) 1260, with annotations beginning on page 1270. In the past such position has been the rule of this court.

In opposition, the appellant father relies on Wilson v. Wilson, supra, which overrules the majority opinion of this court in McDonald v. McDonald, supra.

We have carefully reexamined the McDonald and Wilson opinions. These two appeals were resolved by three to two decisions, one justice concurring in both majority opinions although his concurrence in the later overruled his concurrence in the earlier opinion.

The McDonald opinion [124 Mont. 26, 218 Pac. (2d) 932] allowed counsel fees on two grounds, first, that the court had continuing jurisdiction to modify its award for alimony or provisions respecting the custody of children, after the divorce decree had become final, and second, that "the court has inherent equitable power incidental to its major jurisdiction to make such an award * * * This is the rule also in California." Four years later, the Wilson opinion denied counsel fees on the grounds that "proceedings for divorce are purely statutory" and, except for purposes of appeal, no "action for divorce 'is pending' " after entry of decree.

Both decisions are based on R. C. M. 1947, section 21-137, which reads in part: "While an action for divorce is pending the court or judge may, in its or his discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action. * * * The final judgment in such action may be enforced by the court by such order or orders as in its discretion it may from time to time deem necessary, and such order or orders may be varied, altered, or revoked at the discretion of the court."

The Wilson decision also depends on section 93-8706, R.C.M. 1947, which reads: "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied."

But while recognizing the court's continuing discretion under the provisions of sections 21-137, 21-138 and 21-139, R.C.M. 1947, the Wilson decision, differing from the McDonald decision, does not take account of the constitutional basis for jurisdiction in divorce matters nor does it emphasize the continuing authority in the court to give "such order or orders as * * * it may from time to time deem necessary" or "as may seem necessary or proper" and "to make such *suitable allowance* to the wife for her *support during her life* * * * as the court may deem just * * * and the court may, from time to time modify its orders in these respects * * *" Emphasis supplied. The immediate effect therefore of the Wilson decision is to relate pendency primarily to procedure, to conclude pendency with settlement or appeal, and to infer lack of constitutional basis for jurisdiction in divorce.

However, when read together, with or without the general procedural provisions of section 93-8706, supra, sections 21-137, 21-138, and 21-139 specifically referring to expenses "as alimony" *pendente lite,* to the modification of child custody orders, and to the support of the wife after separation is granted, clearly continue jurisdiction and discretion in the court until the children of divorced parents have attained majority and until the divorced wife has remarried or has died.

To this extent, the action necessarily *is pending,* for, as the Alabama court observed in Sims v. Sims, 253 Ala. 307, 45 So. (2d) 25, 29, Annotation, 15 A.L.R. (2d) 1246, 1252, "the court having the power to alter the allowance may provide for an attorney's fee as a feature of the power.

"* * * The relation of husband and wife gave rise to a

power which is not terminated although the relation has terminated.''

In the words of Mr. Chief Justice Brantly, ''* * * the state makes itself a party to every marriage.'' Franklin v. Franklin, 40 Mont. 348, 106 Pac. 353, 354, 26 L. R. A., N. S., 490. Such is the clear purport of McDonald v. McDonald, supra. See Annotation, 15 A. L. R. (2d) 1270.

Under a statute similar to ours (I. C. section 32-704), the Idaho rule likewise allows fees to counsel in custody modifications. Wenzel v. Wenzel, 76 Idaho 7, 276 Pac. (2d) 485; Wright v. Wright, 76 Idaho 393, 283 Pac. (2d) 1101.

While as stated in Rumping v. Rumping, 36 Mont. 39, 91 Pac. 1057, 12 L. R. A., N. S., 1197, and as reiterated in Docotovich v. Docotovich, 125 Mont. 56, 229, Pac. (2d) 971, and also in Wilson v. Wilson, supra, ''proceedings for divorce are purely statutory,'' the jurisdictional power of Montana courts derives generally from Article VIII of the State Constitution and, in divorce matters, specifically from article VIII, section 11, providing that ''district courts shall have original jurisdiction in all * * * actions of divorce and for annulment of marriage, and for all such special actions and proceedings as are not otherwise provided for.'' Article V, section 26, specifically interdicts local or special laws for granting divorces. *Proceedings* for divorce undoubtedly are statutory, but jurisdiction in matters of divorce is constitutional and may not be abridged. It sounds in equity. Black v. Black, 5 Mont. 15, 2 Pac. 317.

We restore the McDonald decision. To that extent we overrule the Wilson case. Fees to counsel are allowed. The order is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICE ANGSTMAN and THE HONORABLE GEORGE J. ALLEN, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ADAIR: (dissenting).

I dissent.

Sharon Kay Trudgen and Dale Trudgen were married at Polson, Lake County, Montana, on September 21, 1952. They lived together as husband and wife at Polson until March 17, 1955.

There was born to them on October 9, 1953, a daughter, Cheryl Lynn and, on February 25, 1955, a son, Leslie Kent.

On March 17, 1955, the couple separated on which date, Sharon left the home of her husband and, taking the two children with her, went to live at the home of her parents near Polson.

Upon leaving her husband's home, Sharon, through her counsel, J. A. Turnage, Esq., commenced in the district court for Lake County, Montana, a suit against Dale seeking a decree and judgment of absolute divorce.

The defendant Dale, through his counsel, Raymond F. Gray, Esq., appeared in the action by filing a general demurrer to Sharon's complaint. Thus did the district court of Lake County acquire jurisdiction over the subject matter of the action for divorce and the persons of the parties plaintiff and defendant.

On April 26, 1955, the district court made an order disallowing Dale's demurrer to Sharon's complaint, whereupon Dale declined to plead further and suffered his default to be entered.

On May 17, 1955, the Honorable Albert Besancon, a judge presiding in the district court for Lake County, heard the evidence submitted by and on behalf of the plaintiff Sharon, —found that such evidence sustained the allegations of plaintiff's complaint and made and caused to be entered a decree granting the plaintiff, Sharon Kay Trudgen, an absolute divorce from the defendant, Dale Trudgen.

*Decree of Divorce.* The decree of divorce so entered, omitting its formal parts, reads:

"It Is Therefore, Ordered, Adjudged and Decreed By The Court:

"1. *That the bonds of matrimony* heretofore and now existing between the plaintiff and the defendant be, and the same *are hereby dissolved, and the parties and each of them freed from all obligations thereunder, and restored to the status of single persons,* and that the plaintiff herein be and she is hereby granted an absolute decree of divorce from the defendant.

"2. That the plaintiff herein be awarded the care, custody and control of her minor children, Cheryl Lynn Trudgen and Leslie Kent Trudgen, *subject to the right of reasonable visitation by the defendant herein.*

"3. That the defendant herein be, and he is hereby reqiured to pay the plaintiff herein, the sum of $75 per month for the maintenance and support of her minor children, Cheryl Lynn Trudgen and Leslie Kent Trudgen, said payments to be made into the office of the Clerk of this Court, and said payments to continue until the said children reach the age of eighteen (18) years, or until the further order of this Court. Said payments are to commence on the * * * $75 on or before July 1st, and monthly thereafter, and are to be paid into the office of the Clerk of Court not later than the 1st day of each and every month thereafter as long as is herein required.

"4. That the defendant herein be and he is hereby required to pay into the office of the Clerk of this Court, to the credit of J. A. Turnage, Polson, Montana, the sum of $75 as attoney fees, together with the sum of $8.50 as costs, which sums are to be paid not later than the 1st day of Oct., 1955.

"Done in open court this 17th day of May, 1955.

"Albert Besancon

"Judge of the District Court."

(Emphasis supplied.)

There was no motion for new trial nor was any appeal taken from the decree within six months after the entry thereof or at all, and, on November 17, 1955, the decree became, was and

is final and conclusive so far as it concerns the complete and absolute dissolution of the marriage. State ex rel. McVay v. District Court, 126 Mont. 382, 251 Pac. (2d) 840, 845; McVay v. McVay, 128 Mont. 31, 270 Pac. (2d) 393. By the decree entered the marriage was wholly dissolved, R. C. M. 1947, section 21-101, and the plaintiff Sharon and the defendant Dale were restored to the state of unmarried persons. R. C. M. 1947, section 21-102.

The defendant Dale is a truck driver regularly employed by Hess Bottling Company at Polson. He works five days a week and earns $12.80 per day. At the time of the dissolution of the marriage, Dale was owing between $1,000 and $1,200 for doctor, hospital, gas and oil bills, and balances owing on store contracts and on the contract for the purchase of his automobile and, from the wages paid him by his bottling company employer, he made regular monthly payments on such debts.

*Dale Obeyed Decree.* The defendant Dale also paid each and all of the sums specified at the time and in the manner ordered in the decree. He paid for the support and maintenance of his minor children; for attorney fees for plaintiff's counsel, J. A. Turnage, Esq., and for Sharon's costs and disbursements in bringing and prosecuting her action for divorce. In short, the defendant Dale fully did and performed all the acts and things required of him by the decree of divorce. He obeyed the court's every mandate.

*"Right of reasonable visitation."* The controversy now before this court stems from the provisions of paragraph numbered 2 of the above-quoted decree, wherein the district court awarded to the plaintiff Sharon, the care, custody and control of the two minor children *"subject to the right of reasonable visitation by the defendant."*

This simple, sensible and just *"right of reasonable visitation"* was allowed the defendant Dale, not as the husband or as the ex-husband of Sharon, but solely as a parent, namely, as the father of the children. This is not only an important right

of the father, but a right which affects the welfare of his children. Such right should not be denied the father except for reasons touching the children's welfare. State ex rel. Gravely v. District Court, 119 Mont. 276, 283, 284, 174 Pac. (2d) 565.

The father Dale represented to the district court that from March 17, 1955, the day she left his home to June 15, 1955, the plaintiff Sharon kept both children at the home of her parents, Mr. and Mrs. John Fuhrmann, in Lake County, Montana, during which time he was denied the right of visitation of either child.

On June 12, 1955, the plaintiff Dale accompanied by his mother went to the Fuhrmann home to see the children, but at the outset the plaintiff's father, John Fuhrmann and the defendant's mother became involved in an argument which "broke off the visit" causing Dale and his mother to leave without seeing the children.

On June 15, 1955, being the third day after Dale's unsuccessful attempt to see his children, the plaintiff Sharon, without consulting with or obtaining the consent of either the district court or the children's father, removed them from the home of her parents in Lake County, Montana, to the City of Spokane, in the State of Washington, where she established and has since maintained her permanent residence.

On July 24, 1955, Sharon and the children returned to Lake County, Montana, for a visit of about a day or so and on this occasion Dale saw his children for the first time since March 17, 1955, the day whereon Sharon and the children left Dale's home and went to live with the Fuhrmanns.

In the fall of 1955, Dale represented to the district court of Lake County that the removal of the children, from the State of Montana and from the jurisdiction of the district court of Lake County, made it impossible for him to exercise "the right of reasonable visitation" granted him in the original order and decree of May 17, 1955, and he petitioned that such order be modified so as to allow the plaintiff mother to continue to have the care, custody and control of the children,

but ordering that she be required to deliver the older child, Cheryl Lynn, to the defendant Dale, in Lake County, Montana, at regular specified intervals and for specific brief periods of time to the end that the defendant father be no longer denied the "right of reasonable visitation" so granted him in the original decree.

Although the plaintiff mother and both children were then without and beyond the jurisdiction of the district court for Lake County, the plaintiff mother voluntarily returned to the State of Montana and submitted to the jurisdiction of such district court, where, on November 8, 1955, a hearing on the defendant father's petition for modification was had before District Judge C. E. Comer, the defendant father appearing in person and by his counsel, Raymond F. Gray, Esq., and the plaintiff mother appearing in person and by her counsel, J. A. Turnage, Esq.

*Order of Modification No. 1.* Following such hearing, the plaintiff mother returned to Spokane and, on November 14, 1955, Judge Comer filed *his* first order of modification wherein the plaintiff mother was "authorized to take the children to the State of Washington" where some five months before she had taken them without the knowledge or permission of either the defendant father or the court. The court's order of modification also provided that the mother return the older child to Lake County, Montana, at three month intervals for one week of custody by the father commencing on February 8, 1956; that the father pay to the mother all the expenses of such trips from Spokane to Polson and return, and that the father pay for the care, education, support and maintenance of the two children the sum of $90 per month. See section 21-138, Revised Codes of Montana 1947.

*Dale Complied with Order of Modification.* The defendant father faithfully and fully performed and did all the acts and things required of him by the above order of modification, and he made each and all of the payments required of him at the time and in the manner ordered.

On the evening of December 24, 1955, Sharon and the two children arrived in Polson from Spokane for a visit at the home of Sharon's parents during the Christmas holiday season.

On the morning of December 27, 1955, defendant's counsel, Mr. Gray, and plaintiff's counsel, Mr. Turnage, appeared in the district court of Lake County before Judge Comer, at which time Attorney Gray requested that the father be allowed to have the older child, Cheryl Lynn, during the time the mother and the children were visiting in Polson. To the granting of this request the mother's counsel, Mr. Turnage, protested and objected on the ground that the mother had been given no notice, either of the father's application or of the hearing thereon.

*Order of Modification No. 2.* Judge Comer overruled the protest and objection and thereupon, on the same morning, December 27, 1955, made and filed *his* second order of modification wherein it was ordered that "the defendant Dale Trudgen have the custody of Cheryl Lynn Trudgen for one (1) week commencing with this date and that the defendant will return said child to the mother after the expiration of one (1) week" and that "the Sheriff of Lake County, Montana, take custody of the said child and deliver her to the defendant."

At about noon on that same day, December 27, 1955, Judge Comer placed his above modification order in the hands of the sheriff of Lake County, Montana, for service upon the plaintiff mother, and the sheriff immediately proceeded to the John Fuhrmann home, where he served the order upon the plaintiff Sharon and took into his custody the older child Cheryl Lynn.

*Sharon Retains Additional Counsel.* Immediately following such service upon her and at about the hour of 12:35 p.m. on December 27, 1955, the plaintiff mother consulted and retained Stanley M. Doyle, Esq., of Polson to associate with her original counsel, J. A. Turnage, Esq., at which time she agreed to pay Mr. Doyle the sum of $150 as his attorney fee for assisting in representing her in the proceedings involving the temporary custody of her daughter Cheryl Lynn, and *"the right of reason-*

*able visitation by the defendant"* father accorded him in the original decree of May 17, 1955.

At about 1:10 in the afternoon of that same day, December 27, 1955, the plaintiff mother, accompanied by Attorneys Turnage and Doyle, appeared before Judge Comer at Polson, where after an ex parte hearing, the Judge decided that he would modify his court order of that morning so as to require the defendant Dale and his father to return the child, Cheryl Lynn Trudgen, to the home of John Fuhrmann by 12:00 noon of the following day.

Following such hearing and upon reaching his decision to modify his earlier order of modification made that forenoon, the district judge, by long distance telephone, called defendant's counsel, Mr. Gray, at Ronan, Montana, where said counsel then resided and maintained his law office, and informed counsel of the court's intention to so modify its most recent order.

*Order of Modification No. 3.* Thereupon, on the afternoon of December 27, 1955, Judge Comer made and filed in said child custody proceeding *his* third order of modification wherein it was ordered that "the defendant Dale Trudgen have the custody of Cheryl Lynn Trudgen until twelve noon, Wednesday, December 28, 1955, at which date and hour the said child Cheryl Lynn Trudgen will be delivered to the parent of the plaintiff, John D. Fuhrmann at his home contiguous to Polson, Montana, and the plaintiff will then take the child to Spokane, Washington * * * " and that the "maternal grandfather of the said infant child, Cheryl Lynn Trudgen, will have the custody and control of the said minor child and will deliver the said child to court in February of 1956, in conformity with the order heretofore made, and that the defendant Dale Trudgen will be entitled to the child for a period of one week and six days in excess thereof in the month of February."

On January 10, 1956, there was filed in said proceeding in the office of the clerk of the district court of Lake County, an affidavit made by the plaintiff, Sharon Kay Trudgen "for the

purpose of * * * nullifying any order requiring her to bring her infant daughter * * * from Spokane, Washington, to Polson, Lake County, Montana" and "for the purpose of obtaining from the defendant One Hundred and Fifty Dollars ($150) as and for reasonable attorney's fees which plaintiff has agreed to pay to Stanley M. Doyle, Esq., and for the further sum of Two Hundred and Fifty Dollars ($250) for the personal loss, expense and difficulty she has incurred as the result of the * * * acts of the defendant and his counsel and the sum of One Hundred and Twenty Five Dollars ($125) per month, beginning February 1, 1956, for the support and maintenance of the said minor children *and for an order remanding * * * defendant to the county jail of Lake County, Montana, in the event that the said sums * * * mentioned, or such sums as this Court decide, are not paid on or before February 15, 1956."* Emphasis supplied.

Also on January 10, 1956, there was filed in the said district court and cause a "Notice of Motion for Allowance of Attorney's Fees and Modification" signed by J. A. Turnage, Esq., and Stanley M. Doyle, Esq., as attorneys for the plaintiff and addressed to the defendant Dale Trudgen, and to his attorney, Raymond F. Gray, Esq., giving notice, *inter alia,* that on Tuesday, January 17, 1956, plaintiff would apply to the court for an order requiring defendant to pay $120 per month for the support and maintenance of the children; $200 for plaintiff's loss of time, expenses and $150 "as additional counsel fees in the presentation of this action on behalf of the plaintiff."

*Order of Modification No. 4.* On January 17, 1956, the plaintiff's application to modify the orders theretofore made was heard in said district court before Judge Besancon, the plaintiff and the defendant appearing in person and by their respective counsel following which the court made a *fourth* order of modification wherein it was ordered:

That all orders made after the signing of the original decree of divorce on May 17, 1955, be cancelled, revoked and

nullified; and that the original decree of divorce be modified in these particulars:

(1) That defendant pay to plantiff, beginning February 1, 1956, and until the further order of the court, $90 per month for the support and maintenance of the two infant children;

(2) That defendant pay to plaintiff the sum of $50 on or before February 15, 1956, as and for her travel expenses and loss of time incurred in said hearing of that day, January 17, 1956;

(3) That the defendant Dale pay to the attorneys for the plaintiff, J. A. Turnage and Stanley M. Doyle, the sum of $100 for attorney fees in such child custody proceedings;

(4) That plaintiff shall have the right and privilege of residing where ever she may select;

(5) That plaintiff will have the sole and exclusive care, custody and possession of the two minor children;

(6) That the defendant shall have the right of reasonable visitation; and

(7) The plaintiff shall advise the defendant of any change of address in the event such a change occurs.

From Judge Besancon's above order of modification the defendant, Dale Trudgen appeals.

*The Law.*

"It is well established that the powers of courts in matrimonial matters are to be determined entirely upon the terms of the statutes conferring the jurisdiction." Emery v. Emery, 1948, 122 Mont. 201, 223, 200 Pac. (2d) 251, 264.

"Proceedings for divorce are purely statutory and the power which the court exercises is only that conferred upon it by statute." Docotovich v. Docotovich, 1954, 125 Mont. 56, 60, 229 Pac. (2d) 971, 973.

The *general rule* is that attorney fees are not recoverable in an action unless specifically provided by statute or agreement of the parties.

Section 93-8601, Revised Codes of Montana 1947, is a *general statute* which provides:

"The measure and mode of compensation of attorneys and counselors-at-law is left to agreement, express or implied, of the parties, except that in probate proceedings the court may fix and allow the compensation of attorneys representing administrators, executors, guardians, and trustees, and agents appointed by the court. But parties to actions or proceedings are entitled to costs and disbursements as hereinafter provided."

Section 21-137, Revised Codes of Montana 1947, is a *special statute* applicable to only two kinds of actions. It reads:

"*While an action for divorce is pending* the court or judge may, in its or his discretion, require the husband to pay as alimony any money necessary *to enable the wife* to support herself or her children, or *to prosecute or defend the action.* When the husband wilfully deserts the wife, she may, without applying for a divorce, maintain in the district court *an action* against him *for permanent support and maintenance* of herself or of herself and children. During the pendency of *such action,* the court or judge may, in its discretion, require the husband to pay as alimony any money necessary for the prosecution of the action and for support and maintenance, and executions may issue therefor in the discretion of the court or judge. The final judgment in *such action* may be enforced by the court by such order or orders as in its discretion it may from time to time deem necessary, and such order or orders may be varied, altered, or revoked at the discretion of the court." Emphasis supplied.

"This [section 21-137, R. C. M. 1947] is the only statutory authority giving power to a court to grant alimony and expenses to a wife." Bordeaux v. Bordeaux, 1903, 29 Mont. 478, 481, 75 Pac. 359, 360.

"The only statutory authority for allowing suit money or attorney's fees is that contained in R. C. M. 1947, section 21-137 * * *" Docotovich v. Docotovich, supra, 125 Mont. 56, at page 60, 229 Pac. (2d) 971, at page 973.

Section 21-137 consists of four separate sentences. The stat-

ute is concerned with *two* distinct kinds of action. Each action is separately treated in the statute.

The provisions of the first sentence of section 21-137 apply *only* to an *action for divorce.* Such first sentence reads: *"While an action for divorce is pending* the court or judge may, in its or his discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action." (Emphasis supplied.)

It was this first sentence of section 21-137, supra, that authorized and empowered Judge Besancon, on May 17, 1955, and *while the action for divorce was pending,* to order and require the defendant husband Dale to pay the sum of $75 as attorney fees for plaintiff's counsel, Mr. Turnage, who had commenced and prosecuted the action to judgment for plaintiff.

The first sentence of section 21-137, supra, begins with the words, *"While an action for divorce is pending."* With these seven words just quoted, the Legislature, at the very outset, expressly placed a definite time limit on the exercise by the court or judge of the granted power to award to a plaintiff wife the money necessary to enable her to prosecute her action for divorce, including a reasonable attorney fee for her lawyer and her necessary outlay for court costs.

When may an action for divorce be said to be pending? The Legislature has anticipated and it has answered this question by the enactment of section 93-8706, Revised Codes of Montana 1947, which provides:

*"Actions—when deemed pending.* An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied."

Section 93-3001, Revised Codes of Montana 1947, reads:

*"Actions—how commenced.* Civil actions in the courts of record of this state are commenced by filing a complaint."

As before stated, no appeal was taken from the final decree

of absolute divorce entered May 17, 1955. The maximum time of six months allowed by statute for the taking of an appeal after the entry of the decree and judgment passed and expired on November 17, 1955. R.C.M. 1947, section 93-8004, subd. 1.

It follows as a matter of plain statutory law that plaintiff's action for divorce was pending from the time she filed her complaint in her action for divorce in the early spring of 1955 to and including the 17th day of November, 1955, and no longer, and that from and after said 17th day of November, the plaintiff's action for divorce ceased to be pending—the marriage by then had become fully, finally and permanently dissolved, R.C.M. 1947, section 21-101, and the plaintiff Sharon and the defendant Dale became and were restored to the state of unmarried persons. R.C.M. 1947, section 21-102.

The second sentence of section 21-137, supra, has no application whatever to an action for divorce. Such second sentence applies only to *an action for permanent support and maintenance* brought by a wife against the husband who has wilfully deserted her, wherein such deserted wife *"without applying for a divorce"* seeks a judgment for permanent support and maintenance of herself or, of both herself and children.

The third sentence of section 21-137, supra, likewise has no application to an action for divorce but only to *"such action"* as is mentioned and provided for in the immediately preceding second sentence of section 21-137, supra, being *an action for permanent support and maintenance* for a deserted wife or her children or both, brought and maintained by such deserted wife *"without applying for a divorce."*

Finally the words *"in such action"* employed in the fourth sentence of section 21-137 refer back to the *action for permanent support and maintenance* brought by a deserted wife *"without applying for a divorce"* being the one and only action mentioned and contemplated in the immediately preceding third sentence of section 21-137, and also in the second sentence of section 21-137 which immediately precedes the third sentence. Clearly, the second, third and fourth sentences of the

statute, section 21-137, have no application whatever to an action for divorce. The fourth and final sentence of section 21-137 applies only to the means and procedure provided by statute for enforcing the final judgment *"in such action"* as is referred to and mentioned in the immediately preceding third and second sentences of the statute which apply only to an action brought by a deserted wife who, *"without applying for a divorce"* applies for permanent support and maintenance of herself or her children or both.

In an action for divorce the provisions of sections 21-138, and 21-139 and of the first sentence in section 21-137 of the Revised Codes of Montana of 1947, govern and not the provisions of the second, third and fourth sentences of section 21-137.

In this state there is no common law in any case where the law is declared by statute. Section 12-104, R.C.M. 1947. The case of Black v. Black, 5 Mont. 15, 2 Pac. 317, cited and relied upon as authority by the majority opinion herein was decided by the Supreme Court of Montana Territory and long prior to the adoption of section 12-104 above, which was first enacted as part of the Civil Code of 1895, and what is said therein, like what was said in the early case of Edgerton v. Edgerton, 12 Mont. 122, 29 Pac. 966, 16 L.R.A. 94, 33 Am. St. Rep. 557, has no application here. See Decker v. Decker, 56 Mont. 338, at pages 345, 346, 185 Pac. 168, at page 170. It is historically inaccurate to say that at this time and in this jurisdiction an action for divorce "sounds in equity."

In State ex rel. Wooten v. District Court, 1920, 57 Mont. 522-525, 189 Pac. 233, 234, 9 A.L.R. 1212, this court said:

*"That the courts of this state have no inherent power, either as courts of law or equity, to dissolve marriage, and that the power to decree a divorce is purely statutory, has been determined by this court.* Rumping v. Rumping, 36 Mont. 39, 91 Pac. 1057, 12 L.R.A., N.S., 1197, 12 Ann. Cas. 1090. This is so because of the fact that, at the time our forefathers brought with them the common law of England, neither courts of law

or equity had jurisdiction in such matters; they being handled exclusively by the ecclesiastical courts. 2 Bishop on Marriage and Divorce, 431. The first legislative assembly of the territory, therefore, provided for actions for divorce, on grounds which are now recognized as applying only to annulment proceedings, as well as those for divorce proper, and provided for the granting of alimony, both permanent and temporary, in all such actions. Laws of Montana, First Sess. 1864—65, page 430. These provisions were carried forward to the Acts of the Seventh Session, 1871-72, page 457, and were later included in the Revised Statutes of 1879, pages 513-514, and thereafter incorporated in the Compiled Statutes of 1887, as sections 999 to 1006, inclusive.

''Although it thus appears that up to 1895 the successive legislative assemblies of this state did not recognize the fact, there is a clear distinction between actions for the annulment of a marriage on pre-existing grounds and those for the dissolution of such a contract for acts committed after its solemnization. * * *

''In codifying the laws of the state in 1895, the Legislature recognized the error made theretofore and separated the two classes of causes of action. Codes 1895, sections 110 to 203, inclusive. These sections are found in chapter 2 of title 1 of the Civil Code. * * * Section 3677 (191) [now section 21-137, R.C.M. 1947] of article 4 of the chapter provides: '*While an action for divorce is pending* the court or judge may, in its or his discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action.' It also provides for actions for support and maintenance, and that —'*During the pendency of such action* the court, or judge, may, in its or his discretion, require the husband to pay as alimony any money necessary for the prosecution of the action and for support and maintenance,' etc. It will be noted that the foregoing provisions— and *they are the only provisions in the Codes*

*on the subject of alimony*—make no reference to actions for the annulment of a marriage.

"While it is true that, from 1865 to 1895, the laws of this state specifically empowered the court to grant temporary alimony in this class of cases, as well as actions for divorce, by including both classes of actions in one section, as we have heretofore seen, on the adoption of the Codes with its new classification of these two subjects, all the laws on the subject then in effect (sections 999-1006, Comp. Stats. 1887) were specifically repealed by section 4673 of the Codes of 1895, now section 6235 of the Revised Codes. And, if there still remained any doubt as to whether such sections remained in force, it was further provided that—'The Code, establishes the law of this state respecting the subjects to which it relates.' Section 6214, Rev. Codes. And: 'No statute, law, or rule, is continued in force because it is consistent with the provisions of this Code on the same subject; but in all cases provided for by this Code, all statutes, laws, and rules heretofore in force in this state, whether consistent or not with the provisions of this Code, unless expressly continued in force by it, are repealed or abrogated.' Section 6234, Rev. Codes.

"*It is therefore evident that whatever statutory authority the court now has in awarding alimony must be found in said section 3677, Revised Codes [now section 21-137, R.C.M. 1947].* * * *

"Section 3677 [now section 21-137, R.C.M. 1947] authorizes the court to grant temporary alimony in but two classes of cases, to wit: '*While an action for divorce is pending,*' and '*during the pendency of*' actions for support and maintenance. *We are impelled, therefore, to the conclusion that there is no statutory authority in this state for the making of such an award* as that complained of." (Emphasis supplied.)

In Bordeaux v. Bordeaux, 1903, 29 Mont. 478, 482-484, 75 Pac. 359, 360, this court, after quoting the first sentence of section 191 of the Civil Code [now section 21-137, R.C.M. 1947] said:

"We are of the opinion that under the above-quoted provisions of the statute *the district court had jurisdiction* and power, notwithstanding the judgment, *at any time prior to the determination of the action on appeal from the judgment, or prior to the expiration of the time of appeal, to require the husband to pay any money necessary to enable the wife* to support herself and *to further prosecute or defend the action.* Ex parte Winter, 70 Cal. 291, 11 Pac. 630; Larkin v. Larkin, 71 Cal. 330, 12 Pac. 227; Bohnert v. Bohnert, 91 Cal. 428, 27 Pac. 732; McCarthy v. McCarthy, 137 N.Y. 500, 33 N.E. 550; McBride v. McBride, 119 N.Y. 519, 23 N.E. 1065; Watkins v. Watkins, 66 Mo. App. 468; State ex rel. Clarkson v. St. Louis Court of Appeals, 88 Mo. 135; State ex rel. Gerck v. Seddon, 93 Mo. 520, 6 S.W. 342. *It is well settled that the court below has no power, after trial and judgment in the case, to compel the husband to provide the wife money to pay for past services of attorneys, or for expenses incurred in the trial of the case;* that the necessity mentioned in the statute refers to prosecuting and defending the action in the future. Therefore, after the case has been tried, and the judgment has been entered, no such necessity can exist. Lacey v. Lacey, 108 Cal. 45, 40 Pac. 1056; Loveren v. Loveren, 100 Cal. 493, 35 Pac. 87; McCarthy v. McCarthy, 137 N.Y. 500, 33 N.E. 550; Newman v. Newman, 69 Ill. 167. * * * The court below evidently refused to make the allowance, further than the retainer above mentioned, on the theory that he was unable to tell what the reasonable value of such fees would be until after the trial of the case, and that he would reserve the right to grant such fees until that time. But, if the law did not allow him to order their payment after the trial and entry of judgment, he could not make the reservation effective.

"Under the above authorities we are clearly of the opinion that *the defendant,* by her showing, *did not bring her application within the exception recognized, and* that *the court below* therefore *erred in allowing attorney's fees for past services, after the judgment had been entered.*" (Emphasis supplied.)

In Grimstad v. Johnson, 1921, 61 Mont. 18, at pages 22, 23, 201 Pac. 314, at page 315, 25 A.L.R. 351, this court said:

"We shall not stop to inquire what power the courts in this jurisdiction would have had at common law in divorce cases to require the husband to pay the fees of counsel employed by the wife. *The statute declares the extent of the power and, in our opinion, is exclusive;* for 'in this state there is no common law in any case where the law is declared by the Code or the statute' (section 8060, Rev. Codes), and *'the Code establishes the law of this state respecting the subjects to which it relates.'* (section 8061.) It requires but a casual reading of section 3677, supra [now section 21-137, R.C.M. 1947], to ascertain that the object of the legislature in enacting it was to give the courts discretionary power, to be exercised *during the pendency of the action* upon a proper showing by the wife in an application for that purpose, to compel the husband to provide the means necessary to enable her to prosecute or defend the action. In other words, *the power in this behalf conferred by the statute is only ancillary to, or an incident of, an action for divorce.* This renders the conclusion necessary that *when the main power conferred by this section has ceased to be operative the ancillary or incidental power also ceases to be operative* and cannot be invoked by the wife's counsel in an independent action to charge the husband.

"Upon examination of the decided cases in other states which have the same or similar statutory provisions, we find that their courts generally agree that *counsel fees may be allowed only while the divorce action is pending.* Loveren v. Loveren, 100 Cal. 493, 35 Pac. 87; Burnham v. Tizard, 31 Neb. 781, 48 N.W. 823; Clarke v. Burke, 65 Wis. 359, 27 N.W. 22, 56 Am. St. Rep. 631; Isbell v. Weiss, 60 Mo. App. 54; Meaher v. Mitchell, 112 Me. 416, 92 A. 492; Ann. Cas. 1917A, 688; Humphries v. Cooper, 104 Pac. 606, 55 Wash. 376, 133 Am. St. Rep. 1036; Beadleston v. Beadleston, 103 N.Y. 402, 8 N.E. 735; Kinchloe v. Merriman, 54 Ark. 557, 16 S.W. 578, 26 Am. St. Rep. 60; Zent v. Sullivan, 47 Wash. 315, 91 Pac. 1088, 13

L.R.A., N.S., 244, 15 Ann. Cas. 19. \* \* \* The rule was impliedly recognized by this court in the case of Bordeaux v. Bordeaux, 29 Mont. 478, 75 Pac. 359; s. c. on rehearing, 32 Mont. 159, 80 Pac. 6. In that case it was held that *a district court has no power under the statute to allow counsel fees for past services, even during the pendency of the divorce proceedings;* the only possible exception to this being, perhaps, where the allowance for such past service would be necessary to enable the wife to continue the future prosecution of the action or to make her defense. If the court cannot allow counsel fees for past services, it necessarily follows that it cannot, after the divorce proceeding has terminated, entertain an independent action by counsel against the husband for services rendered for the wife during the pendency of the action." (Emphasis supplied.)

In Grannis v. Superior Court, 1905, 146 Cal. 245, 256, 79 Pac. 891, 896, 106 Am. St. Rep. 23, it is said: *"The right to a divorce is subject to the legislative will and exists only by legislative grant.* The change in the method made by this law affects only the procedure and the right of the parties to an immediate divorce, and does not take jurisdiction from the court. *The right to a divorce not being inherent or constitutional, but statutory, the Legislature could repeal the law, and thus effectually prevent the granting of any divorces,* or it could suspend the right for any number of years after the beginning of the action, without affecting the jurisdiction of the court. *The Legislature has complete control of the subject, and may impose whatever restrictions or delays it pleases,* either *in regard to the time for beginning the action, or the method and order of procedure after the action is begun.* The grant of jurisdiction means only that such limited rights of divorce as the Legislature provides are cognizable in the superior court under such system of procedure and *subject to such restrictions as may from time to time be established."* (Emphasis supplied.)

In Loeb v. Loeb, 1948, 84 Cal. App. (2d) 141, 190 Pac. (2d) 246, 248, the court said:

"A proper evaluation of the merit of appellant's second contention, that a sufficient showing of necessity for pendente lite allowances of support and suit money was not made, calls for a general statement of the law governing such allowances and of the facts relied upon by respondent. These allowances are not a matter of absolute right. They may be granted in the sound discretion of the trial court, but section 137 does not empower the court to award temporary support and suit money except upon a finding of necessity.

"Appellant contends that section 137 governs exclusively. Respondent replies that the awards were made under the general equitable powers of the court in accordance with the procedure specified in section 139, as well as section 137, Civil Code. *The powers of the court in matters of divorce to which these sections relate are derived therefrom, and are not within the general equity powers.* Grannis v. Superior Court, 146 Cal. 245, 255, 79 Pac. 891, 106 Am. St. Rep. 23." (Emphasis supplied.)

In Bluhm v. Bluhm, 1954, 129 Cal. App. (2d) 546, 277 Pac. (2d) 421, 423, it is said:

"The *discretion contemplated* by sections 137.2 and 137.3 of the Civil Code with respect to pendente lite awards and attorneys' fees *is a legal discretion controlled by established legal principles.*" (Emphasis supplied.)

To same effect see Spreckles v. Spreckles, 111 Cal. App. (2d) 529, 244 Pac. (2d) 917, 920, and Gossman v. Gossman, 52 Cal. App. (2d) 184, 126 Pac. (2d) 178.

From the time of their enactment in the Codes of 1895 down to the year 1948 little difficulty was experienced by the courts of this state in understanding, complying with and applying the provisions and *limitations* imposed upon the authority and power of the court in actions for divorce by sections 21-137 and 93-8706, Revised Codes of Montana of 1947, and is illustrated by this court's decisions in Bordeaux v. Bordeaux;

State ex rel. Wooten v. District Court; and Grimstad v. Johnson, all cited above.

The McDonald case. In McDonald v. McDonald, 1950, 124 Mont. 26, 218 Pac. (2d) 929, 15 A.L.R. (2d) 1260, District Judge Albert Besancon presiding in the district court for Lake County, Montana, on July 28, 1947, rendered and caused to be entered a decree granting to the plaintiff, Geraldine L. McDonald, an absolute decree of divorce from the defendant, Thomas McDonald, wherein, *inter alia,* it was adjudged:

(a) That the bonds of matrimony theretofore existing between the plaintiff and the defendant be fully dissolved;

(b) That the custody of the child of the marriage, Marsha Ann McDonald, born July 9, 1945, be awarded to the plaintiff Geraldine;

(c) That the defendant father, Thomas McDonald, pay to the plaintiff Geraldine $45 per month for the support of the child; and

(d) That the defendant father "shall have the right and privilege of visiting said minor child at proper and reasonable times and places while said child is in the custody of the plaintiff."

Immediately after the entry of the decree, Geraldine married one Jack Cochran, an oil field worker then employed in the Cut Bank, Montana, oil fields, and to the Cochrans, on July 2, 1948, a child was born.

During her confinement, Geraldine left the child, Marsha Ann McDonald, with Geraldine's parents who were then living in Glacier Park.

No appeal was taken from the decree of divorce so entered on July 28, 1947, and the time allowed by statute for the taking of an appeal therefrom passed and expired on January 28, 1948 (section 93-8004, subd. 1), whereupon the action for divorce ceased to be pending (section 93-8706) and the marriage theretofore existing between Geraldine and her first husband, Thomas McDonald, became completely dissolved and terminated (section 21-101), and each party to the McDonald

action for divorce was restored to the state of an unmarried person so far as Geraldine's first marriage was concerned. (section 21-102).

On July 22, 1948, and long after the time for taking an appeal from the decree of absolute divorce so entered, on petition of the defendant father, Thomas McDonald, representing that the care and custody furnished to his daughter, Marsha Ann, by her mother Geraldine and by Geraldine's mother was improper, unwholesome and not for the best interests of the child, District Judge Besancon issued an order directed to Geraldine requiring that she show cause before the district court on a day certain why the original custody order should not be modified so as to award to the defendant father the custody of the child, Marsha Ann McDonald. However, Geraldine having heard of the filing of the defendant father's petition immediately left the State of Montana with her then husband, Jack Cochran, and the child Marsha Ann, for some unknown destination on the Pacific Coast, all without the knowledge or consent of either the district court or the defendant father. In this manner did Geraldine escape personal service in the proceedings for custody so instituted by the defendant father.

Service in the proceeding was made by publication and, on September 27, 1948, after hearing had, the district court made an order modifying its original custody order by awarding the custody of Marsha Ann to the defendant father.

After considerable search the father ascertained that Geraldine and the child, Marsha Ann, were then living in Artesia, California, being a suburb of Los Angeles, whereupon, in January 1949, he journeyed there and sought to prevail upon Geraldine to deliver the child to him as directed in Judge Besancon's order of September 27, 1948.

Upon Geraldine's refusal to surrender the child to him, the defendant father obtained from the Los Angeles County Court having jurisdiction of the matter, a writ of habeas corpus requiring Geraldine to bring the child, Marsha Ann, before that court on a day certain, but Geraldine refused to obey the writ

and taking Marsha Ann with her immediately left California and returned to the State of Montana, where on her application therefor, Judge Besancon, on March 29, 1949, made an order of modification wherein he:

(1) Awarded the full custody of Marsha Ann to Geraldine and granted leave for Geraldine and the child to reside in California;

(2) Directed that the defendant may visit the child at any reasonable time and place;

(3) Ordered that his former custody order of September 27, 1948, be set aside;

(4) Ordered that the defendant father pay direct to the plaintiff Geraldine's attorney, a fee of $150 for representing her in the child custody proceeding;

(5) Ordered that the defendant father pay to the clerk of the district court $45 each month to be remitted to Geraldine for the care and support of Marsha Ann;

(6) Adjudged that plaintiff Geraldine have judgment for her costs and disbursements incurred in such proceedings; and

(7) Ordered that the original decree of July 28, 1947, remain in full force except as modified by this last order.

On his appeal from the above order, the defendant, Thomas McDonald, inter alia, contended that there is no statutory authority in Montana for allowance to plaintiff's attorney of counsel fees after the divorce action had ceased to be pending and at a time when the marriage theretofore existing had been absolutely and permanently dissolved.

In Rumping v. Rumping, 1907, 36 Mont. 39, at page 43, 91 Pac. 1057, at page 1058, 12 L.R.A., N.S., 1197, this court said: "It is elementary, of course, that *neither courts of law or equity have any inherent power to dissolve marriage.* The power to decree a divorce is purely statutory." (Emphasis supplied.)

Again in the more recent case of Docotovich v. Docotovich, 1951, 125 Mont. 56, at page 60, 229 Pac. (2d) 971, at page 973, this court, in a unanimous opinion, held "Proceedings for di-

210

vorce are purely statutory and the power which the court exercises is *only* that conferred upon it by statute.

"The *only* statutory authority for allowing suit money or attorneys' fees is that contained in R.C.M. 1947, section 21-137, * * *" (Emphasis supplied.)

The majority opinion in McDonald v. McDonald, 124 Mont. 26, 218 Pac. (2d) 929, 15 A.L.R. (2d) 1260, supra, wholly fails to quote, apply or even refer to section 93-8706, R.C.M. 1947, which is a companion statute to section 21-137, supra. That the opening phrase of section 21-137, namely, *"While an action for divorce is pending"* be neither misunderstood nor misconstrued the Legislature very wisely and cautiously took the extra precaution to enact a separate statute, section 93-8706, wherein it precisely set forth the one and only measure and guide for definitely ascertaining and determining when and during what exact period of time an action is deemed and declared by law to be pending. No appeal was taken from the decree of divorce entered July 28, 1947, in the McDonald case and the maximum six months allowed by section 93-8004, subd. 1, R.C.M. 1947, for the taking of an appeal, expired on January 28, 1948, from and after which last mentioned date, the time for appeal having passed, the action for divorce ceased to be pending under the plain provisions of section 93-8706, and the marriage therefore existing between Geraldine L. McDonald and Thomas McDonald became and was completely dissolved and terminated, section 21-101, and each party was restored to the state of unmarried persons, section 21-102.

It was not until March 29, 1949, being one year, two months and one day after the action for divorce in the McDonald case ceased to be pending that District Judge Besancon made his order of modification from which the defendant, Thomas McDonald, appealed to this court and wherein the district court, *inter alia,* (a) awarded the custody of the child Marsha Ann to the plaintiff mother; (b) provided that the defendant father may visit his child at any reasonable time and place; (c) provided that the final decree of divorce of July 28, 1947,

remain in full force except as modified by the last order, being the one appealed; (d) ordered that the defendant father pay direct to the plaintiff mother's attorney a fee of $150 for representing her in the child custody proceedings; and (e) ordered that the plaintiff mother have judgment for her costs and disbursements in the proceedings, all had and done long after the time for taking an appeal from that portion of the decree granting plaintiff a final decree of absolute divorce had passed. Section 93-8706.

In the majority opinion in the McDonald case, supra, 124 Mont. at page 31, 218 Pac. (2d) at page 931, it is said:

"Defendant contends that there is no statutory authority for attorney's fees after the divorce action is ended and after the relationship of husband and wife has terminated.

"There is respectable authority supporting that view. [Citing decisions from the courts of Washington, Massachusetts, Arkansas, Florida and New York.]

"We think however that the weight of authority and the better reasoned cases under statutes such as ours hold otherwise. Among such cases are the following: [Citing decisions from courts of Missouri, Utah and also New York.] (Resisting alimony and change of custody of children). [Citing decisions from Kansas, Oklahoma, Illinois and Minnesota.]"

Section 21-137, supra, "is the only statutory authority giving power to a court to grant alimony and expenses to a wife." Bordeaux v. Bordeaux, supra, 29 Mont. at page 481, 75 Pac. at page 360.

The exercise of the power so given to a court by the above statute is expressly limited and restricted to that period of time "While" the "action for divorce is pending", section 21-137.

The "courts generally agree that counsel fees may be allowed only while the divorce action is pending", Grimstad v. Johnson, supra, 61 Mont. at page 23, 201 Pac. at page 315, which, under the statute, section 93-8706, and the undisputed facts in the McDonald case covers only that period "from

the time of its commencement * * * until the time for appeal has passed.'' Section 93-8706, R.C.M. 1947. There is nothing vague, indefinite or uncertain in the provisions of either section 21-137 or section 93-8706, supra. Each section means precisely what it says and, each had been consistently so construed by this court prior to the appeal in the McDonald case.

In Wallace v. Wallace, 273 Mass. 62, 172 N.E. 914, 915, it is said:

''The power and jurisdiction of the court in granting divorces are entirely statutory. * * * The power of the court to make orders for payments to the libelee for counsel fees and expenses in proceedings for modification of the decree in respect to custody of a child incurred after the decree for divorce has become absolute does not exist unless it is found in the statutory provisions. G.L. c. 208, section 17 provides: 'The court may require the husband to pay into court for the use of the wife *during the pendency of the libel* an amount to enable her to maintain or defend the libel, and to pay to the wife alimony during the pendency of the libel.' This section by its express terms assumes that the relationship of husband and wife has not been legally terminated. The payment is to be made by the husband to the wife. The words *'during the pendency of the libel'* are used twice in this section of the statute. Before St. 1851, c. 82, was enacted the court had no authority to award counsel fees pendente lite. Coffin v. Dunham, 8 Cush. 404, 405 [62 Mass. 404, 405], 34 Am. Dec. 769; Baldwin v. Baldwin, 6 Gray 341, 342 [72 Mass. 341, 342]. Before St. 1855, c. 137, section 6, was passed the court had no power to grant alimony for the period before the decree for divorce is entered. Shannon v. Shannon, 2 Gray 285, 287 [68 Mass. 285, 287]. Before that statute was passed, however, the court had authority to grant alimony in the final decree. Orrok v. Orrok, 1 Mass. 341; Chase v. Chase, 105 Mass. 385; Burrows v. Purple, 107 Mass. 428, 432. The sole purpose of the statute last mentioned seems to be to authorize the court to order the payment of alimony for the period before the decree

of divorce becomes absolute. These two statutes were combined in one by Gen. St. 1860, c. 107, section 22, and have been so treated since. The history indicates a legislative intention that the words *'during the pendency of the libel'* should have the same meaning in the two clauses of the section and have no application to the period after the decree for divorce became absolute. Furthermore, the only purpose for which payments can be made under this statute is to enable the wife to 'maintain or defend the libel.' If these words are given their natural meaning they refer to a period before the marriage tie is severed by a decree absolute. * * * Sections 28 and 37 of chapter 208, relating to the entry of modifying orders for the care, custody and support of children and for alimony, contain no provisions for payments to the former wife to cover expenses incurred by her in such proceedings. *The libel for divorce was at an end so far as the material rights of the parties were concerned and a new status was created for them when the decree became absolute.* Bernatavicius v. Bernatavicius, 259 Mass. 486, 489, 156 N.E. 685, 52 A.L.R. 886. It was final as to that matter even though incidental rights relating to children and alimony were not finally determined by the decree and might thereafter be further considered.''

In Turny v. Nooney, 21 N.J. Super, 522, 91 A. (2d) 418, 420, it is said:

''Defendant asks that the fee of her counsel be charged, in part at least, against plaintiff, on the ground that this suit is in the nature of a 'matrimonial action'. While the parties were husband and wife at one time, the relation was severed in 1946 and defendant for some years has been the wife of another man.

''The practice of charging a husband with the reasonable legal expenses of his wife, when the parties are engaged in litigation, arose because at common law all the wife's personal estate and the income from her lands passed to her husband, and if he were not liable, the wife, in many cases, must go without justice. Here legal expenses were considered 'necessaries' and her solicitor could sue her husband at law, just as could

a merchant who supplied the wife with food. [Citing cases.] The practice of allowing the wife a counsel fee has continued in New Jersey because in most families the wife still is, in fact, financially dependent on her husband. [Citing cases.] Clearly, the policy which fixes liability on the husband does not apply to an action between Turney and the wife of Nooney.''

In Bishop v. Bishop, 210 App. Div. 3, 205 N.Y.S. 542, 543, it is said:

''We have here a case where a final judgment of divorce has been entered, dissolving the relation between the parties of husband and wife. The judgment is in full force and effect, no appeal has been taken therefrom, and the marital relationship no longer exists. In Lake v. Lake, 194 N.Y. 179, at page 185, 87 N.E. 87, 90, Judge Chase said:

'' 'There is another reason why the order for counsel fees should not have been made. Such an order must primarily rest upon the existence of the relation of husband and wife. Unless that relation is sustained by the parties, there is no basis for the order. Even in an action brought by the wife to annul a marriage upon a cause which goes to the legality of the marriage originally, the allegations of the wife will be taken against her as true, and an allowance to her to maintain the action will be denied. Jones v. Brinsmade, 183 N.Y. 258 [76 N.E. 22, 3 L.R.A., N.S., 192]. The final judgment in this case wholly separates the parties and dissolves the relation of husband and wife, and it has been entered and no appeal has been taken therefrom. The action is not pending.'

''And this court held in Bishop v. Bishop, 165 App. Div. 954, 150 N.Y.S. 660 (the divorce action between these same parties), that:

'' 'The court had no power to grant counsel fee after a final judgment dissolving the marriage'—citing Lake v. Lake, supra.

''The class of cases in which it has been held that counsel fees will be allowed to a wife to take or defend an appeal from the judgment of divorce are not relevant to the question now under consideration, for obvious reasons.''

In Kraushar v. Kraushar, 284 App. Div. 811, 132 N.Y.S. (2d) 6, 7, it is said:

"Application by respondent's former wife, individually and as guardian ad litem for their two infant children, for a temporary injunction restraining respondent from molesting her or said children; for a permanent injunction so restraining him and, also, restricting his visits with the children, and for an order modifying the visitation terms of the separation agreement between appellant and respondent declaring void a provision therein that in case of her remarriage custody of the children should revert to him at his option; and for counsel fees for appellant's attorneys. * * *

"The parties not being husband and wife, this is not a matrimonial action and there is no statutory authority for granting the counsel fees requested. [Citing cases.]"

In Haakenson v. Coldiron, 190 Wash. 627, 70 Pac. (2d) 294, 296, the court said:

"Attorney's fees may be allowed only in cases where a statute so provides. * * * After a divorce is granted and the property rights of the parties and the custody of the children are settled, the court cannot, in a garnishment proceeding, require the payment of suit money and attorney's fees to aid the divorced wife in the prosecution of garnishment proceedings, as we have no statute authorizing the allowance of suit money and attorney's fees to the divorced wife in such actions."

The majority opinion in McDonald's case, supra, overlooked these facts, viz.:

(1) The question of the court's authority and power to award attorneys fees to plaintiff wife in an action for divorce is neither new nor novel in this jurisdiction;

(2) Such question is fully answered and governed by the provisions of sections 21-137 and 93-8706, R.C.M. 1947;

(3) Such question and the law applicable thereto had been theretofore considered and ruled upon by this court in Bordeaux v. Bordeaux, 1903, supra; Rumping v. Rumping, 1907, supra; State ex rel. Wooten v. District Court, 1920, supra;

Grimstad v. Johnson, 1921, supra; and Albrecht v. Albrecht, 1928, 83 Mont. 37, 269 Pac. 158. Compare Rufenach v. Rufenach, 1947, 120 Mont. 351, 353, 354, 185 Pac. (2d) 293; Emery v. Emery, 1948, 122 Mont. 201, 223, 200 Pac. (2d) 251; Shaw v. Shaw, 1949, 122 Mont. 593, 613, 208 Pac. (2d) 514;

(4) ''There are well reasoned cases cited from other jurisdictions on either side of the question, but we think the case at bar must be determined by the construction of our own statutes.'' In re Fligman's Estate, 1942, 113 Mont. 505, at page 509, 129 Pac. (2d) 627, at page 629, quoted with approval in the recent case of In re Hammerstrom's Estate, Mont. 1958, 326 Pac. (2d) 699, at page 700; and

(5) In the year 1921 this court found and held: ''Upon examination of the decided cases in other states which have the same or similar statutory provisions, we find that their courts generally agree that *counsel fees may be allowed only while the divorce action is pending.*'' (Emphasis supplied.) Grimstad v. Johnson, 61 Mont. at page 18, 201 Pac. 314, at page 315, 25 A.L.R. 351.

The majority opinion in the McDonald case, supra [124 Mont. 31, 218 Pac. (2d) 932], also states: ''It is our view that section 21-137, supra, is broad enough to warrant the court in awarding to plaintiff expenses with which to prosecute the proceedings seeking a modification of the award of custody of the minor child.''

*How broad is section 21-137?*

So far as pertinent here section 21-137 provides:

''*While an action for divorce is pending the court or judge may* * * * *require the husband to pay as alimony any money necessary to enable the wife* * * * * to prosecute or defend the action.''* (Emphasis supplied.)

Section 21-137, R.C.M. 1947, is not as broad as it would be:

(1) If the opening seven word phrase were omitted or stricken from the section;

(2) If the opening phrase of the section were completely ignored or nullified;

(3) If the word *"In"* were inserted for and in place of the word *"While"* as the opening word of the section and if the words *"is pending"* were deleted, omitted, discarded or stricken, thereby amending the opening phrase to simply read: *"In an action for divorce* the court or judge may \* \* \*'';

(4) If the section were amended by inserting after the word *"*pending'' in the opening phrase thereof seven additional words so as to make the opening phrase read: "While an action for divorce is pending, *or upon any action for modification thereof,* the court or judge may \* \* \*'' See printed House Bill No. 329 introduced in the 1955 Legislature;

(5) If the section would be amended by inserting, adding and incorporating at the end thereof a wholly new paragraph which would read: *"In any proceeding instituted to compel compliance with the decree, or any order of the court, respecting the payment of costs, alimony or attorney fees, the court may, in its discretion, allow costs of such proceedings, including attorney fees."* See printed House Bill No. 289 introduced in the 1957 Legislature; and

(6) If the 1895 State Legislature had not enacted into the law of this state section 1895 of the Montana Codes of 1895, now section 93-8706 R.C.M. 1947, setting forth precisely when and for what period of time "An action is deemed to be pending" under the codes of Montana.

The majority opinions of this court in the case of McDonald, supra, and in the instant case of Trudgen v. Trudgen, has assumed to effect all of the changes, alterations and amendments in section 21-137 that would have been accomplished by the above methods and procedure and they have done so without any aid or assistance whatever from the Legislative Department of our government.

The wording of section 21-137 has not been changed or altered in any particular by any action of Legislature at any time since the enactment of such statute in 1895, hence, the section is precisely as broad as it was at the time this court decided Bordeaux v. Bordeaux, supra; Rumping v. Rumping, supra; Deck-

er v. Decker, supra; State ex rel. Wooten v. District Court, supra; and Grimstad v. Johnson, supra.

Clearly the seven word opening phrase of section 21-137 expressly *limits* the authority and power of the court or judge to require the husband to pay the wife the money with which to pay her attorney fees to that period of time only *"While an action for divorce is pending"* as the term "pending" is defined by the Legislature in section 93-8706, supra.

The office of the judge is not to omit from section 21-137 the limiting phrase *"While an action for divorce is pending"* and not to omit or overlook the Legislature's declaration in section 93-8706 as to when and for what period of time an action, including an action for divorce, shall be deemed to be pending. See sections 93-401-15 and 93-401-16, R.C.M. 1947.

If section 21-137 is broad enough to warrant the court in awarding to the plaintiff, Geraldine L. McDonald, the money with which to pay the fees of an attorney to represent her in a child custody proceeding brought long after the time for taking an appeal from the final decree of absolute divorce had passed, it has achieved such breadth only by omitting or deleting therefrom the limiting phrase, *"While an action for divorce is pending"* and by omitting or refusing to accept the Legislature's declaration as to when an action is deemed to be pending. Obviously the provisions of sections 21-137 and 93-8706 admit of no such interpretation as above attempted.

The majority opinion in the McDonald case, supra, then says: "Also, even though the statute does not specifically authorize such fees after the divorce is granted, the court has inherent equitable power incidental to its major jurisdiction to make such an award." Here it is implied that even though the statute, section 21-137, does not specifically authorize the court to require the former husband to pay to the former wife the fees of her attorney for his services rendered, long after the decree of absolute divorce had been entered and long after the time for taking an appeal from such decree had passed, never-

theless the court still has in reserve sufficient power incidental to its major jurisdiction to make such an award.

The numerous decisions of this court cited above and particularly those in the cases of Bordeaux, Rumping, Wooten and Grimstad fail to support the contention so advanced.

The Wilson case. On December 2, 1954, this court pronounced its decision in the case of Wilson v. Wilson, 128 Mont. 511, 278 Pac. (2d) 219, 224, wherein it became the court's duty to apply and construe the provisions of section 21-137, Revised Codes of Montana of 1947 and "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted * * *'' See Section 93-401-15, R.C.M. 1947. In the performance of this plain duty, this court, in part, said:

"It is a fundamental principle that ordinarily one party to a suit may not be called upon to pay the litigation expenses of his adversary except when and to the extent that some statute may clearly provide indemnity to the winning 'party by way of taxable costs in the suit. * * *

"The state legislative assembly saw fit to make and provide a specific exception to the above fundamental and general principle in actions for divorce by empowering the courts to make allowances therein to the wife for counsel fees, but only while such action for divorce 'is pending'. R.C.M. 1947, section 21-137. The exception to the above general principle that the adversary's counsel fees are not allowable except in cases expressly provided for by some statute such as section 21-137, supra, rests fundamentally upon the existence of the marital relation for after a decree of absolute divorce has become final and the action for divorce is no longer pending there then exists no implied obligation of the former husband to his former wife arising out of their former married state. When an absolute divorce becomes final it ends the ability of the former wife to thereafter bind her former husband even for necessaries that may be supplied to his erstwhile spouse.

"For these reasons there can be no justification for extend-

220

ing the exception provided in section 21-137, supra, to situations which do not clearly fall within the reasons for the provisions of such statute. * * *

"It will be observed that in the enactment of section 21-137, supra, the state legislative assembly used the phrases 'While an action for divorce is *pending*' and 'During *the pendency* of such action'. That such phrases be neither misunderstood nor misconstrued the legislature took the extra precaution to enact a separate statute, R.C.M. 1947, section 93-8706, wherein it defined and precisely stated when an action is deemed to be *pending*.

"R.C.M. 1947, section 93-8706, provides: '*Actions—when deemed pending*. An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed unless the judgment is sooner satisfied.' * * *

"It is only 'while an action for divorce *is pending*' * * * that the court is authorized or empowered to require the husband (not the former husband) to pay to the wife (not the former wife) money to 'enable *the wife* * * * to prosecute or defend the action' as is expressly provided in section 21-137, supra. * * *

"In 27 C.J.S. Divorce section 216, pages 910, 911, notes 81-83, it is said: 'Where allowances for expenses of suit and counsel fees of the wife are, by statute, specifically provided for it is usually held that her right to such allowances is purely statutory and cannot be extended by the court; hence such allowances can be made only in accordance with the terms of the statute; and ordinary equitable principles do not obtain.'

"In Hensen v. Hensen, 212 Iowa 1226, 238 N.W. 83, 84, the Supreme Court of Iowa, in construing a statute similar to section 21-137, supra, said: 'Unless, therefore, authority is conferred by statute upon the court to award suit money and attorney fees in an application by one of the parties to secure a modification of a decree as to the subsequent custody of a minor child, none may be allowed.'

"In Wallace v. Wallace, 273 Mass. 62, 172 N.E. 914, the court correctly held that the power of the court to make orders for payments to a former wife for her counsel fees and expenses in proceedings for the modification of the divorce decree in respect to the custody of a child which fees and expenses were incurred after the decree for divorce had become absolute does not exist unless it is found in the statutes. * * *

"Under section 21-137, supra, counsel fees may be. allowed *the wife* only while the divorce action is pending and not after the decree dissolving the marriage has become final for then the action for divorce is no longer pending, section 93-8706. It follows that the district court had no authority to award plaintiff her attorney's fees so incurred in instituting and prosecuting these proceedings seeking to modify the original decree long after it had become final.

"Plaintiff's petition filed November 21, 1952, and which prompted the allowance to her of her attorney's fee was not a complaint for divorce, but one purely and simply for an order that would give her the custody of the children. It was a simple issue of the right to custody that is frequently presented by *habeas corpus* wherein there is no provision for the allowance of attorney's fees. At the time plaintiff's petition for change of custody because of change of conditions the defendant father had been freed of the primary obligation to contribute to his former wife's support and in the absence of a statute justifying it, the trial court was lacking in authority and power to allow the former wife her fees in these supplemental proceedings and the court's action in making the award constituted error."

In Murphy v. Murphy, 71 Cal. App. 389, 235 Pac. 653, 654, an action to renew a judgment for maintenance of a dependent daughter and to declare such judgment to be a lien upon certain property standing in the name of the wife of the judgment debtor, the appellate court said, in part: "This is not an action in which the court is authorized by statute to allow attorney's fees. Except where attorney's fees are specifically allowed by

statute, or by contract of the parties, they are not recoverable by a successful litigant as costs or otherwise. 7 Cal. Jur. 286. The compensation of attorneys is left to the agreement of parties. Section 1021, Code Civ. Proc. This is an action to renew a judgment. It is not an action for maintenance under section 206 of the Civil Code.''

The case of Hendrix v. Hendrix, 130 Cal. App. (2d) 379, 279 Pac. (2d) 58, was an action commenced by Perry Hendrix, as plaintiff, against the defendant, Evelyn Irene Hendrix, to obtain the custody of two minor children.

Perry Hendrix and Evelyn Irene Hendrix had been husband and wife. They were the parents of the two minor children involved. By decree entered in the King County court in the State of Washington, the father Perry and the mother Evelyn were divorced and the custody of the aforesaid two minor children was there awarded to the mother Evelyn. Thereafter, in July 1953, the mother Evelyn left the children with their father Perry in Riverside County in the State of California and returned to the State of Washington.

About November 27, 1953, Evelyn came to Riverside County, California, for the purpose of regaining custody of the two children so left with their father, and on that date she consulted an attorney in Riverside who advised her that he then was quite busy, but that he would be able to see her during the first part of the next week.

In the meantime the father Perry, as plaintiff, commenced in the Superior Court for Riverside County, in the State of California, an action against the defendant mother Evelyn to obtain an order granting him the custody of said two minor children and upon her return visit to the attorney's office in Riverside she was there served with a restraining order prohibiting her from taking the children out of the jurisdiction of the Superior Court for Riverside County.

In an affidavit subsequently filed by her in said Superior Court for Riverside County, California, Evelyn set forth that upon considering the order so served upon her she became con-

vinced that such order was in error since she then had the custody and possession of both children, whereupon she returned to Seattle, Washington, with the two children and that thereafter, on or about December 15, 1953, both Evelyn and the children were taken into custody in Seattle; that Evelyn consulted attorneys in Seattle who advised her that she need not return to California and that since she then was physically present in the State of Washington with the children, her custody of them could not be disturbed; that notwithstanding such advice the children were taken from her in Seattle and given to the plaintiff father, Perry Hendrix, who returned to Riverside, California with them.

The defendant Evelyn did not appear in the action for custody so filed in the Superior Court for Riverside County, California, and on December 10, 1953, Evelyn's default was entered and that same day a hearing was had, following which hearing said court awarded the plaintiff Perry the exclusive custody and control of the two children involved.

On February 15, 1954, Evelyn filed in the Superior Court for Riverside County motions to set aside her default and to vacate and set aside the default judgment entered against her together with her above-mentioned affidavit in support of such motions. Following a hearing on Evelyn's aforesaid motions, and on an order to show cause why she should not be allowed fees for her attorney in the action, the Riverside Superior Court on March 25, 1954, entered an order denying Evelyn's motions to vacate and set aside, but granting and awarding her attorney's fees in the action in the sum of $75, which the plaintiff Perry was ordered to pay. Thereafter the California trial court reconsidered its aforesaid order and by an order dated May 4, 1954, set aside as void, its earlier order granting Evelyn attorney's fees of $75 from which most recent order the defendant Evelyn took an appeal. In affirming the order and action of the trial court, the appellate court (130 Cal. App. (2d) 379, 279 Pac. (2d) 58, at page 60) said: "Defendant then appealed from the order of May 4, 1954, setting aside the order granting

attorney's fees in the sum of $75, contending that the court abused its discretion in denying the allowance of attorney's fees to defendant. This contention is likewise without merit. The instant action was brought to obtain the custody of two of the minor children of the parties. It is not one of the actions specified in sections 137.3 and 137.5 of the Civil Code in which attorney's fees are allowed. Since there is no statutory provision for the allowance of attorney's fees in the present action, the mode of compensation is left to the agreement, express or implied, of the parties. Section 1021, Code Civ. Proc. As was said in Murphy v. Murphy, 71 Cal. App. 389, 392, 235 Pac. 653, 654: 'Except where attorney's fees are specifically allowed by statute, or by contract of the parties, they are not recoverable by a successful litigant as costs or otherwise.' The trial court by its order of May 4, 1954, declared its prior order of March 25, 1954, granting attorney's fees to be void and properly set it aside since the order was void on its face.''

Following the pronouncement by this court of its decision in the Wilson case (Wilson v. Wilson), 128 Mont. 511, 278 Pac. (2d) 219, 224, the appellant, Alice Wilson, filed a timely petition for rehearing therein, which after careful consideration this court denied on January 11, 1955, at which time the Thirty-fourth (1955) State Legislative Assembly was in session. In its opinion in the Wilson case, supra, this court further said:

''While the legislative assembly could, if it saw fit, enact a statute empowering the courts to allow a former wife her counsel fees and expenses incurred in seeking an order to modify a decree of absolute divorce long after it has become final and long after the action for divorce has ceased to be pending, the fact remains that law makers of this state have not enacted any such statute and, in the absence of such enactment, the courts should not attempt to usurp such legislative functions by writing into the statutes other and different provisions than were enacted by the legislature.

''To guard against judicial legislation and the usurpation of legislative functions the state legislative assembly enacted

R.C.M. 1947, section 93-401-15, which provides: 'In the construction of a statute * * * the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted * * *'.''

This court's construction, in the Wilson case, of the provisions of section 21-137, R.C.M. 1947, conforms with its earlier pronouncements in the Bordeaux case (Bordeaux v. Bordeaux), 29 Mont. 478, 75 Pac. 359, and in the Grimstad case (Grimstad v. Johnson), 61 Mont. 18, 201 Pac. 314, 25 A.L.R. 351, and that such construction carries out the intent of the Legislature and that it meets with the approval of the Legislature is evidenced by the rejection by Montana's lawmakers of two most persistent and vigorous attempts to amend the statute so as to nullify the time limitation imposed by the first seven words of section 21-137, upon the authority and power of the court to order and require the husband to pay to the wife the money with which to pay her attorney in her action for divorce his fees after such action had ceased to be pending.

*Thirty-fourth Legislative Assembly Refuses to Amend Statute.* Within three weeks after the denial by this court of appellant Alice Wilson's petition' for rehearing in the Wilson case, supra, to-wit, on the 30th day of the Thirty-fourth Legislative Assembly (1955) of the State of Montana, Representative Ralph J. Conrad of Lewis and Clark County, by request, introduced House Bill No. 329, entitled:

''A Bill For An Act Entitled: 'An Act To Amend Section 21-137, Revised Codes of Montana, 1947, Relating To Expenses Of Action—Alimony; Providing That A Husband Be Required To Pay Attorney Fees While An Action For Divorce Is Pending Or Any Modification Thereof, As The Court Or Judge May, In It [sic] Or His Discretion, Require The Husband To Pay To Prosecute Or Defend The Action; And Repealing All Acts And Parts Of Acts In Conflict Herewith'.''

As before stated, while section 21-137, R.C.M. 1947, contains four sentences it is only the first sentence that applies to an

action for divorce, as the authors and proponents of H. B. No. 329 well recognized, for such Bill as introduced sought only to amend the first sentence of section 21-137 by inserting after the word "pending," being the seventh word of the section, the following seven italicized words, viz.: *"or upon any action for modification thereof"* so as to change the first sentence of section 21-137 to read: "While an action for divorce is pending, *or upon any action for modification thereof,* the court or judge may, in its or his discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action."

Clearly the above-proposed amendment was designed to nullify and destroy the express and definite limitation placed upon the authority granted by the Legislature to the court or judge to allow attorney fees to the wife to enable her to prosecute or defend the action to that specific period of time while and only while her "action for divorce is pending" namely, "from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." Section 93-8706, R.C.M. 1947.

After the printing of House Bill No. 329 it was sought to eliminate the word "thereof" and to insert eight additional words to the six remaining amendatory words originally proposed so as to make the proposed amendment contain fourteen amendatory words all to be inserted in the first sentence of section 21-137 here set forth in italics, and to make the section as so amended read: "While an action for divorce is pending, *or upon any action or proceeding for modification of any order or decree therein;* the court or judge may, in its or his discretion, require the husband to pay * * *."

House Bill No. 329, supra, provided for the reenactment of the second, third and fourth sentences of section 21-137, precisely as they then read, and as they now read, however, the Bill failed to pass in the Senate, the measure died and section 21-137 continued on without change and as originally enacted in 1895. . ..

*Thirty-fifth Legislature Refused to Amend Statute.* On the 25th day of the Thirty fifth Legislative Assembly (1957) of the State of Montana, Representative Jerome Anderson of Yellowstone County introduced House Bill No. 289, entitled:

"A Bill For An Act Entitled: 'An Act To Amend Section 21-137 Of The Revised Codes Of Montana, 1947, Relating To Expenses Of Action And Alimony, By Providing For Allowance Of Costs And Attorney Fees In Proceedings Instituted To Compel Compliance With Decree Or Order Respecting Alimony And Attorney Fees'."

The above bill sought to reenact the entire four sentences comprising section 21-137, R.C.M. 1947, precisely as they have read at all times since their original enactment in 1895, and then to add to the four sentences now constituting section 21-137 a fifth sentence reading:

"*In any proceeding instituted to compel compliance with the decree, or any order of the court, respecting the payment of costs, alimony or attorney fees, the court may, in its discretion, allow costs of such proceedings, including attorney fees.*"

Thus by adding at the end of section 21-137, the above italicized paragraph, did the proponents of the bill introduced, House Bill No. 289, seek to eliminate and nullify the force and effect of the seven word opening phrase of section 21-137 which expressly limits the exercise by the court or judge of his authority and power to award the plaintiff wife her attorney fees, to that period of time only *"While an action for divorce is pending."*

However, House Bill No. 289 met the same fate in the Thirty-fifth State Legislative Assembly (1957) as had House Bill No. 329 in the previous Thirty-fourth State Legislative Assembly (1955), for it was rejected by the Senate so that nothing came of the proposed measure. It failed of passage. Thus have two successive Legislative Assemblies by their rejection of the above House Bills evidenced their acquiescence in and approval of the construction and interpretation awarded sections 21-137 and

93-8706, R.C.M. 1947, by this court in its opinion in the Wilson case.

Clearly, this court cannot lawfully do by construction what the Legislature refused to do by enactment.

In Murray Hospital v. Angrove, 92 Mont. 101, at pages 115-116, 10 Pac. (2d) 577, at page 583, this court said: "It is the duty of the court to ascertain, if possible, the intention of the Legislature in passing an act and to give effect thereto, * * *

"Also, when an amendment is offered to a pending bill and rejected, the intention of the Legislature is manifest that the law shall not read as it would if the amendment had been accepted, and the courts cannot do 'by construction what the legislature refused to do by enactment.' McDonald & Johnson v. Southern Express Co., C.C., 134 F. 282, 288; United States v. United Shoe Machinery Co., D.C., 264 F. 138, 174, affirmed 258 U.S. 451, 42 S. Ct. 363, 66 L. Ed. 708."

In Converse v. Byars, 112 Mont. 372, at pages 378, 379, 118 Pac. (2d) 144, at page 147, this court speaking through Mr. Justice Angstman said: "We are asked to overrule the Fratt case [In re Fratt's Estate, 60 Mont. 526, 199 Pac. 711] as unsound. Were the questions presented to us for the first time, we might have reached a different conclusion from that announced in the Fratt and Hash [In re Hash's Estate, 64 Mont. 118, 208 Pac. 605] cases. The Fratt decision was rendered in 1921. The legislature ever since then has acquiesced in the construction of the statute there proclaimed, and we think we should not now construe it differently. If any change is desired it should come from the legislature, particularly as applied to wills made after the Fratt decision."

In McBride v. Reardon, 1937, 105 Mont. 96, 103, 69 Pac. (2d) 975, 979, this court again speaking through Mr. Justice Angstman said: "The act was construed by the Attorney General in 1935 as we have here construed it (vol. 16, Attorney General Reports, page 135), and the Legislature, though meeting since, did not see fit to make any change. This is at least persuasive that it was satisfied with that interpretation."

This same rule of construction has been followed by this court in its determination of the cases of In re Coleman's Estate, ......Mont. ......1957, 317 Pac. (2d) 880, 883; In re Hammerstrom's Estate, ...... Mont. ...... 326 Pac. (2d) 699, and In re O'Grady's Estate, ...... Mont. ...... 326 Pac. (2d) 705.

In the case of In re Coleman's Estate, ...... Mont. ...... 317 Pac. (2d) 880, 882, this court in part, said:

"Counsel for the appellant suggests that the statute should read, as he says, putting in the omitted implications, as follows: [Here the statute appears with thirteen suggested additional words inserted therein.]

"We are not at liberty to so amend a statute as passed by the legislature and approved by the governor. We must determine the plain meaning of the words used and are not at liberty to add in the statute what has been omitted. R.C.M. 1947, section 93-401-15. * * *

"* * * However, appellant would have this court reverse its holding in In re Fligman's Estate, 113 Mont. 505, 129 Pac. (2d) 627, wherein it was held that annuity proceeds were exempt under R.C.M. 1947, section 91-4406. That case was decided in 1942. Eight legislative sessions have been held since the decision and the legislature has not seen fit to amend the statute. Estates and property have been planned and settled on the basis of the decision in the Fligman case, and if necessary to this decision, this court would treat that opinion as *stare decisis*."

In Hayton v. Hayton, 122 Wash. 594, 211 Pac. 745, 746, it is said:

"In Dolby v. Dolby, 93 Wash. 350, 160 Pac. 950, decided in 1916, this court held that, after a divorce has been granted, no order can be made for the payment of suit money and attorney's fees to aid a divorced wife to defend a motion made by her former husband for the modification of the original decree of divorce respecting the child's custody. In 1921 the Legislature, by chapter 109, section 4, added four new sections to the law upon divorce, providing for actions in proceedings to change

or modify divorce decrees, so that there is now in the law the following provisions:

" 'The court shall have power to cause either party to said action or proceeding to file so much or all of the records and files in the original divorce action or proceeding as the court shall deem necessary or proper; and to make and enter all necessary or proper orders for a full hearing and determination of said petition.'

"It is upon the final clause in this section that the order made in the instant case is attempted to be justified. This language, however, does not clearly indicate an authority to make the order here appealed from, and to our minds it cannot be correctly interpreted to give such authority. The Legislature must be presumed to have had in its knowledge the law as laid down in the Dolby case, and had it been its intention to enact a statute overcoming that rule of law, it would seem that it would have used clear and explicit language in so doing. Such language was available and appears in section 2 of chapter 109, Laws 1921, where the Legislature was dealing with the provision to be made for the expenses of the wife in defending the divorce action. The Legislature used the following words:

" 'Pending the action for divorce the court or judge thereof may make * * * such orders relative to the expenses of such action as will insure to the wife an efficient preparation of her case and a fair and reasonable trial thereof.'

"The fact that the Legislature made this explicit provision for the wife's defense is a persuasive argument to us that the omission of such language in the provision for the defending of the action for modification of the decree was intentional, and that the Legislature desired the law as laid down in the Dolby case to continue in effect."

In its opinion in the instant Trudgen case, the majority asserts that this court's decision in the Wilson case, supra, does not take account of the constitutional basis for the court's jurisdiction in divorce matters and that it does not emphasize the court's continuing authority under the provisions of section

21-138, supra, to "give such discretion for the custody, care, and education of the children of the marriage as may seem necessary or proper," or under the provisions of section 21-139, supra, to "make such suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively, and the court may, from time to time, modify its orders in these respects; provided, however, that upon proof of the remarriage of a divorced wife, after the final judgment in a divorce action, the court must order a modification of the judgment by annulling the provisions of the judgment directing the payment of money for the support of the wife."

Here the majority overlook the facts that neither section 21-138 nor section 21-139 supply any authority whatever to the court in an action for divorce, to allow the wife the money necessary to pay her lawyer his attorney fee. It is only section 21-137 that grants such authority, and this court correctly so held in the Bordeaux case, supra, and in the Docotovich case, supra.

However, the grant of power under section 21-137 is subject to the express limitation and restriction on its exercise to that period only "*While*" the "*action for divorce is pending.*"

"Ordinarily it is held that allowances for counsel fees and suit money cannot be made in collateral proceedings to modify a divorce decree in so far as it awards custody of children." 27 C.J.S. Divorce, section 219, page 914. This was the rule in Montana from the time of the enactment, in 1895, of sections 21-137, 21-138, 21-139 and 93-8706, R.C.M. 1947, to pronouncement, in 1950, of the majority opinion in the McDonald case.

Apparently being somewhat fearful of being able to sustain its position herein under the *written* law contained in the Constitution and statutes of Montana, the majority opinion finally resorts to the unwritten and unseen "*inherent power*" claimed to reside within the breast of an omnipotent judge for its authority and power to rule as it has in the McDonald case, for

232

the majority opinion therein finally said [124 Mont. 31, 218 Pac. (2d) 932]:

"Also, even though the statute does not specifically authorize such fees after the divorce is granted, the court has *inherent equitable power* incidental to its major jurisdiction to make such an award." (Emphasis supplied.)

The only power which a court in this jurisdiction has in a divorce action is *derivative* power as opposed to *inherent* power. Such *derivative* power is derived from the people by and through the written law as such written law appears in either the Constitution or, in the statutes of the state.

The Constitution of Montana, art. III, section 1, provides:

"All political power is vested in and *derived* from the people; all government of right originates with the people; is founded upon their will *only,* and is instituted solely for the good of the whole." (Emphasis supplied.)

The source of the jurisdiction and powers of the supreme court is found in sections 2 and 3 of Article VIII of the Constitution of Montana. Bordeaux v. Bordeaux, 26 Mont. 533, 535, 69 Pac. 103.

*Limitations on Power.* The jurisdiction and powers so granted may be exercised only *"under such regulations and limitations as may be prescribed by law."* Mont. Const. art. VIII, sections 2 and 3. (Emphasis supplied.)

The concluding phrase of section 2 of article VIII of the Constitution of Montana, namely, *"under such regulations and limitations* as may be prescribed by law" means as prescribed by the legislature. State ex rel. Middlemas v. District Court, 1956, 130 Mont. 73, 295 Pac. (2d) 233; Howard v. Cook, 59 Idaho 391, 396, 83 Pac. (2d) 208, 210.

Under the Constitution of this state providing for and creating the supreme court, the only power which such court possesses is such as has been granted to it by the people and the power so granted may be lawfully exercised *"under such regulations and limitations as may be prescribed by law."* There is nothing in the law of this state that recognizes any such

thing as "the inherent power of judges" or "the divine right of kings." These doctrines belonged to an entirely different system of government to correct the evils of which government under a *written* constitution and under *written* laws was designed and adopted.

To ascertain the power granted it by the people the supreme court must look to the written constitution of this state for a written grant of power. Finding no such written grant the supreme court may not then resort to nor reach out for any such indefinite, uncertain, unrecognized, uncontrolled and unwritten authority or power as is concealed in such doctrines as "the inherent power of judges" or "the divine right of kings" to justify any attempt by the court to exercise powers not granted and therefore not possessed.

A court has no power to do anything which is not authorized by law.

The constitutional judicial department is an American invention. It was devised to see that government goes no further than its authority extends. The judicial department must not exceed the authority granted it by the people. Its decisions must be the voice of *law* and not the echo of partisan faction.

The Constitution of Montana in article IV, section 1, provides for three distinct departments of government, namely, the Legislative, Executive and Judicial and directs that "no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

What is the meaning of these provisions?

What do they mean to you?

What do they mean to this court?

"The provisions * * * are mandatory and prohibitory, unless by express words they are declared to be otherwise." So says the Constitution, art. III, section 29.

Since this court on December 2, 1954, pronounced its deci-

234

sion in the Wilson case, supra, construing and applying the provisions of section 21-137, R.C.M. 1947, two separate regular Legislative Assemblies have come and gone and each Assembly has rejected any and all attempts therein made to change, alter or amend section 21-137 so as to make such section say and provide precisely what the majority opinion in the instant case now holds section 21-137 already provided without the necessity of making any additions or amendments whatever therein.

Surely the 1955 and 1957 Legislative Assemblies as well as the proponents of House Bill No. 329 in the 1955 Assembly and House Bill No. 289 in the 1957 Assembly viewed the proposed legislation in an entirely different light. However the action taken by both Assemblies manifests legislative approval of section 21-137, as it now reads and as it has read at all times since 1895 and also of this court's interpretation and application of the provisions of such section in this court's opinion in the Wilson case.

"It is elementary, of course, that neither courts of law or equity have any *inherent power* to dissolve marriage. The power to decree a divorce is purely statutory." Emphasis supplied. Rumping v. Rumping, 36 Mont. 39, 43, 91 Pac. 1057, 1058, 12 L.R.A., N.S., 1197.

"The courts alone may dissolve a marriage *but courts have no inherent power to do so.* The only power to decree a divorce is *derivative.* Const. art. III, sec. 1. It is *granted* either by Constitution, art. VIII, sec. 11, or by statute." (Emphasis supplied.) Crenshaw v. Crenshaw, 120 Mont. 190, 215, 182 Pac. (2d) 477, 490.

"It is a general principle of the law of divorce in this country that the courts, either of law or equity, possess no powers except such as are conferred by *statute;* and therefore *authority* for the action of the court in that class of cases *must be found in the statute, and it cannot be looked for elsewhere."* (Emphasis supplied.) Hopkins v. Hopkins, 39 Wis. 167.

To same effect see State ex rel. Wooten v. District Court, supra, 57 Mont. at page 522, 189 Pac. at page 234.

It is only judicial powers that the courts of this state possess and they are expressly prohibited from exercising the powers properly belonging to the legislative department of government. Constitution of Montana, art. IV.

If sections 21-137 and 93-8706, R.C.M. 1947, are to be amended let it be done by legislative enactment—not by judicial construction. Sections 93-401-15 and 93-401-16, R.C.M. 1947.